BOSCAGLIA v MICHIGAN BELL TELEPHONE COMPANY

PACHECO v CLIFTON

Docket Nos. 68327, 70044. Argued October 6, 1983 (Calendar Nos. 13, 14).—Decided December 28, 1984. Released January 15, 1985.

Irene M. Boscaglia brought an action in the Wayne Circuit Court against Michigan Bell Telephone Company and Richard Bierwirth, Robert Koerber, and Dale Wacker, supervisors employed by Bell, alleging violations of the fair employment practices act and the Michigan civil rights act and seeking recovery for physical, mental, and emotional injury resulting from the violations. During the pendency of the action, she sought and was awarded workers' compensation benefits for mental and emotional disability. The court, John D. O'Hair, J., granted the defendants' motion for partial accelerated judgment on the ground that the workers' compensation act provided the plaintiff's exclusive remedy for emotional injury and loss of future wages but denied the defendants' motion for partial summary judgment on the civil rights act claim. The Court of Appeals, Danhof, C.J., and Beasley and Cynar, JJ., denied leave to appeal (Docket No. 65563). The plaintiff appeals.

Frederick Pacheco, Jr., and Cynthia Pacheco brought an action in the Wayne Circuit Court against Clayton Clifton and Bruce Jellison, employees of General Motors Corporation, and against General Motors, alleging a violation of the fair employment practices act and seeking recovery for physical and mental injuries suffered by Mr. and Mrs. Pacheco and for loss of consortium by Mrs. Pacheco. The court, James Montante, J., denied the defendants' motion for summary judgment, holding that the exclusive remedy provision of the workers' compensa-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 81 Am Jur 2d, Workmen's Compensation §§ 50, 52, 55.

[1-3] 15 Am Jur 2d, Civil Rights § 261.

Modern status: "Dual capacity doctrine" as basis for employee's recovery from employer in tort. 23 ALR4th 1151.

Recovery of damages as remedy for wrongful discrimination under state or local civil rights provisions. 85 ALR3d 351.

[2] 20 Am Jur 2d, Courts § 98.

[3] 73 Am Jur 2d, Status §§ 145, 146.

tion act did not bar the plaintiffs' suit and that Mrs. Pacheco had standing to sue the defendants. The Court of Appeals, D. C. Riley, P.J., and Bashara and MacKenzie, JJ., affirmed the ruling that the workers' compensation act did not bar the plaintiffs' action, but reversed the ruling that Mrs. Pacheco had standing (Docket No. 47531). The defendants appeal.

In a unanimous opinion by Justice Levin, the Supreme Court *held:*

The exclusive remedy provision of the workers' compensation act does not bar an action by an employee seeking recovery for physical, mental, or emotional injury resulting from an employer's violation of the fair employment practices act or the Michigan civil rights act.

1. The workers' compensation act is intended to provide compensation for victims of industrial injuries without regard to common-law doctrines such as contributory negligence or the fellow-servant rule which might otherwise bar compensation. The civil rights act and the fair employment practices act address prejudices and biases such as those based on race, sex, or religion. Assuming that the Legislature intended, in enacting these acts, to provide compensation for physical, mental, or emotional injury resulting from discrimination, it would not have intended that that objective would be defeated by the bar of the exclusive remedy provision of the workers' compensation act. Because the exclusive remedy provision does not bar an employment discrimination action seeking recovery for physical, mental, or emotional injuries, the circuit court has original jurisdiction in employment discrimination actions.

2. The fair employment practices act did not provide for derivative actions by or a remedy for loss of consortium for spouses of employees who were victims of discrimination. Absent a legislative intent to provide such recovery, a spouse of a person subjected to discrimination has no right of recovery.

*Boscaglia,* reversed and remanded.

*Pacheco,* affirmed and remanded for further proceedings.

109 Mich App 563; 311 NW2d 801 (1981) affirmed.

1. CIVIL RIGHTS — WORKERS' COMPENSATION — ACTIONS — EMPLOY-
   MENT DISCRIMINATION.

   The exclusive remedy provision of the workers' compensation act does not bar an action by an employee seeking recovery for physical, mental, or emotional injury resulting from an employer's violation of the fair employment practices act or the Michigan civil rights act (MCL 37.2101 *et seq.,* 418.131, 423.301 *et seq.;* MSA 3.548[101] *et seq.,* 17.237[131], 17.458[1] *et seq.*).

2. CIVIL RIGHTS — WORKERS' COMPENSATION — ACTIONS — EMPLOY-
  MENT DISCRIMINATION — CIRCUIT COURTS.

  The circuit court has original jurisdiction in all matters not
  prohibited by law; thus, because an employment discrimination
  action by an employee seeking recovery for physical, mental, or
  emotional injuries resulting from discrimination by an em-
  ployer is not barred by the exclusive remedy provision of the
  workers' compensation act, the circuit court has original juris-
  diction in employment discrimination actions (Const 1963, art
  6, § 13; MCL 37.2101 *et seq.*, 418.131, 423.301 *et seq.;* MSA
  3.548[101] *et seq.*, 17.237[131], 17.458[1] *et seq.*).

3. CIVIL RIGHTS — FAIR EMPLOYMENT PRACTICES ACT — SPOUSES OF
  EMPLOYEES — DERIVATIVE ACTIONS — LOSS OF CONSORTIUM.

  The fair employment practices act did not provide for derivative
  actions by or a remedy for loss of consortium for spouses of
  employees who were victims of discrimination; absent a legisla-
  tive intent to provide such recovery, a spouse of a person
  subjected to discrimination has no right of recovery (MCL
  423.301 *et seq.;* MSA 17.458[1] *et seq.*).

*Prather & Harrington, P.C.* (by *Kenneth E. Prather* and *John R. Foley),* for plaintiff Boscaglia.

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Donald B. Miller); (Anthony A. Haisch,* of counsel), for defendants Bierwirth, Koerber, Wacker, and Michigan Bell Telephone Company.

*Gary A. Colbert* for plaintiffs Pacheco.

*Edmond J. Dilworth, Jr. (Elmer W. Johnson,* General Counsel, *Daniel G. Galant,* and *Nicholas J. Wittner,* of counsel) for defendants Clifton, Jellison, and General Motors Corporation.

Amici Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, Fred W. Batten,* and *Morgan J. C. Scudi)* for Michigan Manufacturers Association.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by

*Richard D. McLellan* and *William J. Perrone)* for Michigan State Chamber of Commerce.

LEVIN, J. The principal question is whether the exclusive remedy provision of the workers' compensation act[1] bars an action seeking recovery for physical, mental, or emotional injury resulting from an employer's violation of the fair employment practices act (FEPA)[2] or the Michigan civil rights act.[3] We hold that it does not.

We further hold that an employee's spouse does not have a derivative cause of action for loss of consortium as a result of an employer's violation of the FEPA.

I

Irene M. Boscaglia worked for Michigan Bell Telephone Company from September 24, 1953, until August 11, 1977. By October 1, 1972, she had been promoted to the position of supply foreman. In May, 1976, Boscaglia refused to accept a lateral transfer to Detroit, and in June, 1976, she was demoted. Boscaglia alleges that her demotion was the result of sex discrimination.

Various employment problems allegedly arose after her demotion. On August 7, 1977, a male supervisor accused Boscaglia of coming to work late. Boscaglia broke down completely, leaving in tears and ultimately receiving psychiatric treatment. She has not returned to work for Michigan Bell.

On April 26, 1978, Boscaglia filed an action against Michigan Bell and three supervisors alleg-

---

[1] MCL 418.131; MSA 17.237(131).

[2] MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.,* repealed by 1976 PA 453 and replaced by the Michigan civil rights act.

[3] MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*

ing violations of both the FEPA and the civil rights act. During the pendency of this action, on April 30, 1979, Boscaglia filed a claim for workers' compensation benefits; on April 29, 1981, she was awarded benefits of $127 per week for mental and emotional disability for a period beginning August 11, 1977, and continuing until further order of the Bureau of Workers' Disability Compensation.[4]

Frederick Pacheco, Jr., was hired as a security guard by General Motors Corporation on November 3, 1953. The complaint, which names General Motors and two supervisors as defendants, alleges various acts of discrimination, during 1974 and 1975, against Pacheco because of his Spanish-American heritage, including a suspension and

---

[4] On September 25, 1979, defendants filed a motion for partial summary judgment and accelerated judgment with respect to Boscaglia's claims in her second amended complaint for emotional injury (e.g., nervousness, depression, mental anxiety) and loss of future wages due to the resultant inability to continue active employment. On December 4, 1980, the circuit judge granted defendants' motion "because such claims are barred by the exclusive-remedy provision of the Workers' Disability Compensation Act." When Boscaglia again sought to recover for emotional injury and resultant loss of future wages in her third amended complaint, the circuit judge granted another motion for partial accelerated judgment because "[p]laintiff's damage claims for emotional injury and the incidental future wage loss * * * are not within the subject-matter jurisdiction of the circuit court. * * * [T]he exclusive remedy is under the [workers' compensation] act before the Bureau * * *."

On September 21, 1981, the Court of Appeals issued its decision in Pacheco v Clifton, 109 Mich App 563, 574; 311 NW2d 801 (1981), stating:

"[T]hose damages which allegedly resulted from the alleged unlawful discrimination by defendants, particularly those resulting from humiliation, embarrassment, loss of consortium, and lost wages, are compensable in circuit court and should not be barred by the exclusivity clause of [the workers' compensation act]."

Contending that this holding was relevant to her case, Boscaglia filed a motion to reinstate her claims for emotional injury and future wages. This motion was filed on the day of trial, July 7, 1982.

The circuit judge declined to entertain Boscaglia's motion to reinstate, and the Court of Appeals denied leave to appeal. This Court granted her application for leave to appeal. 417 Mich 888 (1983).

demotion in late 1974, a discharge on April 29, 1975 (which was reversed on June 2, 1975), and various acts of derision and harassment.

The parties have stipulated that from November 29, 1974 through April 11, 1975, and again from July 8, 1975 through October 13, 1975, Pacheco was on approved medical disability leave for which he was paid sickness and accident benefits by a third-party insurance carrier under the General Motors Group Insurance Plan.[5] Pacheco alleges that he was disabled as a result of hypertension and anxiety caused by the discrimination against him. Pacheco did not file a workers' compensation claim in connection with the alleged acts of discrimination.[6]

[5] It appears that Pacheco also received sickness and accident benefits for the period from April 16 through May 31, 1975, although he was discharged on April 29, 1975, and not reinstated until June 2, 1975.

[6] Pacheco filed an action against defendants alleging a violation of the FEPA. He sought to recover for physical and mental injuries allegedly resulting from the discrimination against him. Pacheco alleges that as a result of the discrimination against him, he has suffered moderately severe renin; essential hypertension; malignant hypertension; paroxysmal supraventicular tachycardia; extreme manifest anxiety; situational anxiety reaction; emotional distress; abnormal activity of the sympathetic nervous system; traumatic or situational neurosis; loss of former job pleasure; loss of consortium; and great pain and suffering.

In the same complaint, his wife Cynthia sought to recover for various physical and mental injuries and loss of consortium that she allegedly suffered as a result of the discrimination against her husband.

Defendants filed a motion for summary judgment, arguing: 1) that the exclusive remedy provision of the workers' compensation act denied the circuit court jurisdiction over Pacheco's claim for personal injuries (defendants' motion for summary judgment did not challenge the jurisdiction of the circuit court to consider Pacheco's separate claim for wages lost as a result of the allegedly discriminatory suspension and demotion), and 2) that Cynthia Pacheco lacked standing to sue under the FEPA. The circuit judge denied defendants' motion, but certified the two issues as controlling questions of law for interlocutory appeal.

On September 21, 1981, the Court of Appeals affirmed the ruling of the trial court that the exclusive remedy provision of the workers' compensation act did not bar the Pachecos' suit:

## II

The exclusive remedy provision of the workers' compensation act provides that "the right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer."[7]

The FEPA, enacted in 1955, declared that the opportunity to obtain employment without discrimination because of race, color, religion, national origin, or ancestry is a civil right,[8] and stated a definition of an "unfair employment prac-

---

"To the extent Mr. Pacheco suffered periods of physical disability, the WDCA is his exclusive remedy. * * * It would appear, however, that this question is moot since the stipulation of facts indicate that during his periods of medical disability Mr. Pacheco was paid benefits by a third-party insurance carrier under the General Motors group insurance plan. Further, we are of the opinion that those damages which allegedly resulted from the alleged unlawful discrimination by defendants, particularly those resulting from humiliation, embarrassment, loss of consortium, and lost wages, are compensable in circuit court and should not be barred by the exclusivity clause of WDCA. This is true not only of those injuries occurring *prior* to plaintiff's disability but also as to those occurring *after* his disability." *Pacheco v Clifton, supra,* pp 574-575 (emphasis in the original).

The Court of Appeals reversed the trial court's ruling with respect to Mrs. Pacheco's claim, holding that "the Legislature did not intend that the spouse of a victim of discrimination has standing to sue under the statute in question [the FEPA] for damages resulting to her from that discrimination." *Id.,* p 577. This Court granted leave to appeal. 417 Mich 888 (1983).

[7] See fn 1.

[8] The 1963 Constitution elevated an employee's statutory right under the FEPA to the status of a constitutional right:

"No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation." Const 1963, art 1, § 2.

Absent legislative implementation, however, this constitutional provision does not apply to private discrimination. *Pompey v General Motors Corp,* 385 Mich 537, 559, fn 20; 189 NW2d 243 (1971). See also Cramton, *The Powers of the Michigan Civil Rights Commission,* 63 Mich L Rev 5, 30 (1964).

tice."[9] In *Pompey v General Motors Corp,* 385 Mich 537, 560; 189 NW2d 243 (1971), this Court declared that an employee "can maintain a civil damage action for redress of his statutorily created right to be free from [racial] discrimination in private employment, and that this remedy may be pursued in addition to the remedial machinery provided by [the FEPA]."

The civil rights act, enacted in 1976, prohibits an employer from discriminating against a person on the basis of religion, race, color, national origin, age, sex, height, weight, or marital status.[10] The act extended "this Court's decision in *Pompey* by expressly providing for direct access to circuit court for an aggrieved party." *Holmes v Haughton Elevator Co,* 404 Mich 36, 44; 272 NW2d 550 (1978) (MOODY, J., *concurring*). This "direct access" provision states that a person alleging a violation of the act may bring a civil action for appropriate injunctive relief "or damages, or both," and that the term "damages" means "damages for injury or loss caused by each violation of this act, including reasonable attorney's fees."[11]

## A

The evils at which the civil rights acts are aimed are different from those at which the workers' compensation act is directed. The workers' compensation act guards against the victims of industrial injuries being "turned away empty handed" and "unrecompensed" as a result of common-law tort doctrines such as contributory negligence and the fellow-servant rule. *Crilly v Ballou,* 353 Mich

[9] 1955 PA 251, MCL 423.301; MSA 17.458(1) and MCL 423.303; MSA 17.458(3).

[10] 1976 PA 453, MCL 37.2202; MSA 3.548(202).

[11] MCL 37.2801; MSA 3.548(801).

303, 307-308; 91 NW2d 493 (1958). The civil rights acts are addressed to "the prejudices and biases" one race, sex, or religion bears against another. *Freeman v Kelvinator, Inc,* 469 F Supp 999, 1000 (ED Mich, 1979).

In *Mathis v Interstate Motor Freight System,* 408 Mich 164, 179; 289 NW2d 708 (1980), the Court noted that "[t]he Worker's Disability Compensation Act (WDCA) and the no-fault insurance act are complete and self-contained legislative schemes addressing discrete problems. Neither act refers expressly to the other." In *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 650; 344 NW2d 773 (1984), the plurality opinion added that "neither [statutory] scheme should be permitted to frustrate the purposes and objectives of the other [statutory] scheme." Just as the Court in *Mathis, supra,* p 183, held that an employee is not barred by the exclusive remedy provision from obtaining no-fault benefits for injuries sustained while occupying a motor vehicle owned by his employer, so too an employee is not barred by the exclusive remedy provision from invoking the civil rights acts to recover for injuries resulting from discrimination by his employer.

The question whether physical, mental, and emotional injuries are compensable under the FEPA or the civil rights act has not been briefed or argued, and hence we intimate no opinion in that regard. We think it self-evident, however, assuming the Legislature in enacting the civil rights acts intended to provide compensation for physical, mental, or emotional injury resulting from discrimination, that it did not intend that that objective would be defeated by the bar of the exclusive remedy provision of the workers' compensation act.[12]

[12] The view that the workers' compensation act does not bar an

Whatever may have been the intention of the Legislature in enacting the exclusive remedy provision of the workers' compensation act, if it intended in enacting civil rights legislation that workers discharged in violation of such legislation could recover for resulting physical, mental, or emotional injury that intention would necessarily supersede or modify the scope of other legislation that otherwise would defeat the intent to permit such recovery.

## B

Defendants in *Pacheco* argue that even if the exclusive remedy provision does not bar the express "direct access" cause of action statutorily created by the civil rights act, it should nevertheless apply to a civil action for violation of the FEPA recognized in *Pompey.*

We read *Pompey* as holding that the Legislature intended a cumulative judicial remedy for an employer's violation of the FEPA. "[T]he question whether a statute creates a private right of action is ultimately 'one of [legislative] intent, not one of whether this Court thinks that it can improve upon the statutory scheme that [the Legislature] enacted into law * * *.' " *Universities Research*

employment discrimination action seeking recovery for physical, mental, or emotional injuries is consistent with the construction of Title VII of the Federal Civil Rights Act, 42 USC 2000e *et seq.,* adopted by the United States Supreme Court. In *Alexander v Gardner-Denver Co,* 415 US 36, 48; 94 S Ct 1011; 39 L Ed 2d 147 (1974), the Court said:

"[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes."

Title VII does not provide for recovery of future lost wages, but rather provides for an award of reinstatement with back pay, 42 USC 2000e-5(g), following the model of the National Labor Relations Act, 29 USC 160(c). See *Albemarle Paper Co v Moody,* 422 US 405, 419, and fn 11; 95 S Ct 2362; 45 L Ed 2d 280 (1975).

We note that the corresponding FEPA provision was also modeled on the NLRA. Compare 1955 PA 251, § 7(h) with 29 USC 160(c).

*Ass'n, Inc v Coutu,* 450 US 754, 770; 101 S Ct 1451; 67 L Ed 2d 662 (1981) (quoting *Touche Ross & Co v Redington,* 442 US 560, 578; 99 S Ct 2479; 61 L Ed 2d 82 [1979]). Thus the only difference in the legislative intent respecting a civil action for violations of the FEPA and the civil rights act is the specificity with which it was expressed. The source of the right to be free from employment discrimination under the FEPA is statutory, just as it is under the civil rights act.[13]

## C

We reject the distinction drawn in *Stimson v Bell Telephone Co,* 77 Mich App 361; 258 NW2d 227 (1977),[14] between disabling and nondisabling

---

[13] The FEPA provides:

"If * * * the [fair employment practices] commission shall determine that the respondent has engaged in or is engaging in any unfair employment practice, the commission shall * * * cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice and to take such further affirmative or other action as will effectuate the purposes of this act * * *." MCL 423.307(h); MSA 17.458(7)(h).

Although this Court has not decisionally addressed the question, courts in other jurisdictions are divided over whether, under similar statutory language, an administrative agency may award damages for physical, mental, or emotional injuries suffered as a result of employment discrimination. Compare *Kansas Comm on Civil Rights v Service Envelope Co, Inc,* 233 Kan 20; 660 P2d 549 (1983), *Bournewood Hospital, Inc v Massachusetts Comm Against Discrimination,* 371 Mass 303; 358 NE2d 235 (1976), *Castellano v Linden Bd of Ed,* 79 NJ 407; 400 A2d 1182 (1979), *School Dist No 1 v Nilsen,* 271 Or 461; 534 P2d 1135 (1975), with *Gutwein v Easton Publishing Co,* 272 Md 563; 325 A2d 740 (1974), *E D Swett, Inc v New Hampshire Comm for Human Rights,* 470 A2d 921 (NH, 1983), *School Dist of Twp of Millcreek v Commonwealth Human Relations Comm,* 28 Pa Commw 255; 368 A2d 901 (1977), *vacated on other grounds* 474 Pa 146; 377 A2d 156 (1977), *Murphy v Industrial Comm,* 37 Wis 2d 704; 155 NW2d 545 (1968), *on reh* 37 Wis 2d 712; 157 NW2d 568 (1968).

[14] *Stimson v Michigan Bell Telephone Co,* held that where an injury is suffered which culminates in disability, workers' compensation is the exclusive remedy. Although the Court did not explicitly address the question of exclusivity when an injury is suffered which does not culminate in disability, the *Stimson* opinion suggests that exclusivity would not apply. See *Freeman v Kelvinator, Inc, supra,* p 1002.

injuries. The bar of the exclusive remedy provision of the workers' compensation act does not depend

The Court of Appeals seems to have based its conclusion on a misreading of the argument in 2A Larson, Workmen's Compensation Law, §§ 68.30-68.34, pp 13-39 to 13-81. In his discussion of nonphysical intentional torts committed against an employee (e.g., employment discrimination, false imprisonment, intentional infliction of emotional distress), Professor Larson notes that when no physical injury has been suffered, and thus "[w]hen no compensation remedy is available, these tort actions fall squarely within the broad class of cases * * * which do not come within the fundamental coverage pattern of the Act at all * * *." Id., § 68.30, p 13-40.

Yet he adds:

"[T]he matter is complicated by the fact that occasionally a tort of this type will become intertwined with a compensable injury in some way. The question then becomes a closer one. It is not whether the tort action will lie when no workmen's compensation claim is possible, but whether a tort action will lie when a compensation claim is also possible, and indeed may have been filed and granted." Id.

With respect to this more "complicated" situation of a nonphysical intentional tort resulting in a physical injury, Professor Larson concludes:

"If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a make-weight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort." Id., § 68.34(a), pp 13-62 to 13-63.

Thus the Court in *Stimson* transformed Professor Larson's distinction between injuries that are physical (exclusive remedy provision applies) and those that are not physical (exclusive remedy provision does not apply) into a distinction between injuries—physical or not physical—that are disabling (exclusive remedy provision applies) and those that are not disabling (exclusive remedy provision presumably does not apply).

Since Professor Larson's argument focused on nonphysical intentional torts generally, in most of which the source of the right involved is the common law rather than statute, his discussion is not applicable to employment discrimination cases in which the source of the right to be free from employment discrimination is statutory.

We express no view regarding the merits of Professor Larson's thesis as applied to other nonphysical intentional torts. See, *e.g., Moore v Federal Department Stores, Inc,* 33 Mich App 556; 190 NW2d 262 (1971) (false imprisonment); *Milton v County of Oakland,* 50 Mich App 279; 213 NW2d 250 (1973) (wrongful discharge); *Broaddus v Ferndale Fastener Div, Ring Screw Works,* 84 Mich App 593; 269 NW2d 689 (1978) (intentional infliction of emotional distress); *Kissinger v Mannor,* 92 Mich App 572; 285 NW2d 214 (1979) (intentional infliction of mental stress).

on whether the worker suffered a compensable disabling injury. An injury may fall within the bar of the exclusive remedy provision, precluding a damage action, although the injury is not disabling and hence not compensable at all. See 2A Larson, Workmen's Compensation Law, §§ 65.40-65.52, pp 12-25 to 12-41.[15]

The *Stimson* distinction would yield anomalous results. Where employment discrimination causes injuries that are not so severe as to culminate in disability, the injured employee would be permitted to sue his employer in tort and recover full damages; however, where the injuries suffered are so severe as to culminate in disability, the injured employee would be restricted to the recovery of workers' compensation benefits.

## D

Defendants in *Pacheco* contend that the applicability of the exclusive remedy provision to any particular employment discrimination action is a question that, as a jurisdictional matter, can only be answered by the Bureau of Workers' Disability Compensation. The Michigan Constitution, however, provides that "[t]he circuit court shall have original jurisdiction in all matters not prohibited by law * * *."[16] Our holding that the exclusive remedy provision does not bar an employment discrimination action seeking recovery for physical, mental, or emotional injuries requires the

---

[15] See *Cole v Dow Chemical Co,* 112 Mich App 198; 315 NW2d 565 (1982); *Genson v Bofors-Lakeway, Inc,* 122 Mich App 470; 332 NW2d 507 (1983). See also *Tredway v Dist of Columbia,* 403 A2d 732 (DC App, 1979), *cert den* 444 US 867; 100 S Ct 141; 62 L Ed 2d 92 (1979); *Grice v Suwannee Lumber Mfg Co,* 113 So 2d 742 (Fla App, 1959); *Hubbard v Reynolds Metals Co,* 482 F2d 63 (CA 9, 1973); *Williams v State Compensation Ins Fund,* 50 Cal App 3d 116; 123 Cal Rptr 812 (1975).

[16] Const 1963, art 6, § 13.

conclusion that the workers' compensation act does not prohibit the circuit court from exercising original jurisdiction in employment discrimination actions.[17]

## III

"[P]rior to the passing of [the FEPA] in 1955, there was in Michigan no recognized legal remedy for acts of discrimination * * * in private employment." *Pompey v General Motors Corp, supra,* p 552. The common law did not provide a remedy either to an employee who claimed to be a victim of employment discrimination or to an employee's spouse who claimed to have suffered injury to the marital relationship as a result of the discrimination against the employee.

## A

In 1955, the FEPA declared the right to be free from discrimination in private employment to be a civil right entitled to protection of the law and provided, for the first time, a remedy to an employee who claimed to be a victim of discrimina-

[17] *Szydlowski v General Motors Corp,* 397 Mich 356; 245 NW2d 26 (1976), does not alter this conclusion. "Properly stated, the *Szydlowski* principle is that the bureau [of workers' compensation] has exclusive jurisdiction to decide whether injuries suffered by an employee were in the course of employment." *Sewell v Clearing Machine Corp,* 419 Mich 56, 62; 347 NW2d 447 (1984).

*Szydlowski* did not concern an independent statutory right such as the right to be free from employment discrimination. Absent such an independent statutory right, the applicability of the exclusive remedy provision depends in part on the resolution of the course of employment issue, and thus the Court in *Szydlowski* held that the determination of that issue was within the exclusive jurisdiction of the bureau of workers' compensation. Our holding in the instant case that the exclusive remedy provision does not bar an employment discrimination action seeking recovery for injuries suffered as a result of an employer's violation of the independent statutory right granted by the FEPA or the civil rights act renders the *Szydlowski* decision, and the rationale therefor, inapplicable to the present case.

tion. The statute did not, however, provide a remedy to the employee's spouse for loss of consortium or injury to the marital relationship. Nor did *Pompey, supra,* which held that the Legislature also intended to create a cumulative judicial remedy for the employee, suggest that the Legislature intended to create a derivative cause of action for the employee's spouse.

Section 7(b) of the FEPA provided that "[a]ny individual *claiming to be aggrieved* by an alleged unlawful employment practice may * * * make, sign and file with the board * * * a verified complaint in writing * * *" (emphasis added).[18] Section 7(h) then provided:

"If, upon the preponderance of the evidence on the record considered as a whole, the [fair employment practices] commission shall determine that the respondent has engaged in or is engaging in any unfair employment practice, the commission shall state its findings of fact and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice and to take such further affirmative or other action as will effectuate the purposes of this act, including but not limited to, hiring, reinstatement or upgrading of employees with or without back pay, or admission or restoration to union membership, including a requirement for reports of the manner of compliance."[19]

We agree with the conclusions of New York courts that an employee's spouse is not a person "aggrieved" within the meaning of the civil rights act. *Hart v Sullivan,* 84 AD2d 865, 866; 445 NYS2d 40 (1981), *aff'd* 55 NY2d 1011; 449 NYS2d 481; 434

[18] MCL 423.307(b); MSA 17.458(7)(b).
[19] MCL 423.307(h); MSA 17.458(7)(h).

NE2d 717 (1982).[20] We also note that the language
of § 7(h) of the FEPA is similar to that of Title VII
of the federal Civil Rights Act[21] and that it has
been held that Title VII does not provide a deriva-
tive cause of action to an employee's spouse.
*Torres v Claytor,* 25 FEP Cases 998 (SD Cal, 1978).

## B

Cynthia Pacheco argues that she possessed a
preexisting common-law loss of consortium action
that was triggered when the Legislature granted
statutory protection to the right to be free from
employment discrimination. Our attention has
been directed to *Washington v Jones,* 386 Mich
466; 192 NW2d 234 (1971). In that case, plaintiff
brought an action for loss of consortium against
the owner and driver of the automobile in which
her husband was riding as a guest when he was
injured. The action alleged gross negligence be-
cause the Civil Liability Act then in force provided
that a guest could only maintain an action against
the owner or operator of the vehicle in which he
was riding if the owner or operator committed
"gross negligence or wilful and wanton miscon-

[20] See also *Belanoff v Grayson,* 98 AD2d 353, 358; 471 NYS2d 91
(1984) (employment discrimination); *Russell v Marboro Books,* 18 Misc
2d 166, 188-189; 183 NYS2d 8 (1959) (invasion of right to privacy).

[21] "If the court finds that the respondent has intentionally engaged
in or is intentionally engaging in an unlawful employment practice
charged in the complaint, the court may enjoin the respondent from
engaging in such unlawful employment practice, and order such
affirmative action as may be appropriate, which may include, but is
not limited to, reinstatement or hiring of employees, with or without
back pay (payable by the employer, employment agency, or labor
organization, as the case may be, responsible for the unlawful employ-
ment practice), or any other equitable relief as the court deems
appropriate. Back pay liability shall not accrue from a date more
than two years prior to the filing of a charge with the Commission.
Interim earnings or amounts earnable with reasonable diligence by
the person or persons discriminated against shall operate to reduce
the back pay otherwise allowable * * *." 42 USC 2000e-5(g).

duct."[22] The Court assumed that there was an action for loss of consortium although it dismissed the case for insufficiency in the evidence. *Id.,* pp 472-473. At common law, however, a guest injured in an automobile accident could recover against a host for ordinary negligence. *Roy v Kirn,* 208 Mich 571; 175 NW 475 (1919); *Eskovitz v Berger,* 276 Mich 536; 268 NW 883 (1936). *Washington v Jones* holds simply that by limiting the preexisting common-law right of a guest to recover in tort to cases of gross negligence or wilful and wanton misconduct, the Legislature did not alter a spouse's common-law action for loss of consortium resulting from the automobile accident.[23]

The question once again is one of legislative intent. Absent a legislative intent to provide such a derivative cause of action, the spouse of a person subjected to discrimination does not have a right of recovery.

In *Boscaglia,* the cause is remanded to the trial court for consideration of Boscaglia's motion to reinstate her claims for emotional injuries and future wages,[24] and further proceedings consistent with this opinion.

---

[22] 1948 CL 257.401.

[23] The civil rights act provides that "[a] person alleging a violation of this act may bring a civil action for * * * damages," with "damages" being defined as "damages for injury or loss caused by each violation of this act * * *." MCL 37.2801; MSA 3.548(801). See fn 3. This provision may be read as encompassing a derivative action for loss of consortium or injury to the marital relationship.

Since *Boscaglia* raises the exclusive remedy issue under both the FEPA and the civil rights act, we have decided that issue with respect to both acts. However, since the loss of consortium issue is only raised in *Pacheco,* and since *Pacheco* raises the issue only under the FEPA, we limit our holding on the loss of consortium issue to the FEPA. We reserve judgment as to whether an employee's spouse may maintain an action for loss of consortium under the civil rights act until that issue is before us.

[24] The trial court did not deny Boscaglia's motion to reinstate, but rather declined to entertain the motion. We remand in *Boscaglia* for consideration of that motion and further proceedings consistent with this opinion.    ` . .

In *Pacheco,* the decision of the Court of Appeals is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

WILLIAMS, C.J., and KAVANAGH, RYAN, BRICK-LEY, CAVANAGH, and BOYLE, JJ., concurred with LEVIN, J.