974 F.2d 1339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert WHITE, Plaintiff-Appellant,
v.
ELECTRONIC DATA SYSTEMS CORPORATION, Defendant-Appellee.
 No. 91-2379.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1992.
 
 Before DAVID A. NELSON, ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a district court order granting summary judgment for the defendant employer in a case brought under the theory adopted in Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 292 N.W.2d 880 (1980), and a common law retaliatory discharge theory. Concluding that the plaintiff was employed on a month-to-month basis and that he had no common law claim for retaliatory discharge, we shall affirm the judgment.
 
 
 2
 * The plaintiff, Robert White, worked for General Motors from 1968 to 1981 as a computer programmer and financial analyst. After an unfavorable performance evaluation in 1981, GM placed him on layoff. Mr. White subsequently filed charges with the Michigan Civil Rights Commission and the U.S. Equal Employment Opportunity Commission, contending that his layoff was racially-motivated (he is an African-American) and that he had been denied access to GM's "open door" grievance procedure in retaliation for filing discrimination charges.
 
 
 3
 In April of 1983 GM and Mr. White executed a Conciliation Agreement and Release settling the charges. Under the terms of this instrument, GM agreed to recall Mr. White from layoff status, to award him back pay, to remove the unfavorable performance appraisal from his record, to provide him with access to GM's open door procedure, and not to retaliate against him. Mr. White was taken back as a financial analyst in the GM Computer Services Group, where he reported to Arnold Nelson. On May 2, 1983, White signed a document entitled "Employment Agreement," in which he acknowledged that his employment was month-to-month.
 
 
 4
 In October of 1984 GM acquired the defendant corporation, Electronic Data Systems, and proceeded to give EDS responsibility for GM's data processing activities. In order to facilitate this transition, approximately 7,000 GM employees, including Mr. White, were transferred to EDS effective January 1, 1985. Mr. White attempted to avoid transfer; failing in the attempt, he filed a civil rights complaint with the Michigan Department of Civil Rights. This complaint alleged that the transfer represented retaliation for the previous civil rights complaint.
 
 
 5
 EDS and GM officials allegedly assured transferees that they were still going to be General Motors employees and that EDS employment policies would be "the same" as those of GM. Mr. White was given no other specific information regarding EDS's employment policies.
 
 
 6
 Following the transfer Mr. White continued to report to Arnold Nelson, who for some time had been keeping notes on White's performance. Nelson claims that he kept the notes because White's performance had deteriorated since his reinstatement. Mr. White claims that the careful attention resulted from GM's desire to build a case against him for retaliatory purposes. In any event, Mr. Nelson noted various flaws in Mr. White's performance and gave him negative evaluations. Mr. White's employment was finally terminated in May of 1986.
 
 
 7
 Three months after his discharge Mr. White sued General Motors and Electronic Data Systems Corporation in federal district court. White alleged that he had been reinstated "to a job at a lower pay scale" and had been transferred to EDS in retaliation for pursuing his discrimination claim against GM, and that his discharge from EDS constituted race discrimination in violation of Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2101, et seq., and 42 U.S.C. §§ 1981, 1985, and 1986. Mr. White also claimed that GM and EDS violated the 1983 conciliation agreement; although the complaint is not a model of good draftsmanship, it can fairly be read as alleging that the discharge violated the conciliation agreement not only because it was discriminatory, but also because it was retaliatory.
 
 
 8
 Because his federal administrative remedies had not been exhausted, Mr. White subsequently moved for leave to amend his complaint by withdrawing the allegation of wrongful discharge. The court granted the motion. White then filed an amended complaint alleging that his reinstatement at a lower pay scale and his transfer to EDS were discriminatory, retaliatory, and in breach of contract. Without referring explicitly to the discharge, White's amended complaint asked the defendants be prevented "from engaging in similar activities which violate the rights of the Plaintiff"; that he be awarded back pay and an additional $10 million in damages; and that he be awarded a position identical to that held by a hypothetical employee with the same status and seniority as his. In October of 1987 the district court issued an order granting summary judgment to GM and EDS. The order was affirmed by a panel of this court in November of 1988.
 
 
 9
 On September 26, 1990, Mr. White filed a complaint against EDS in the Circuit Court of Wayne County. The new complaint alleged that White's discharge constituted a breach of contract under Michigan's Toussaint doctrine. It also alleged that EDS violated Michigan public policy and committed a breach of contract by firing White in retaliation for pressing his discrimination charges.
 
 
 10
 EDS removed the new case to federal district court, where summary judgment was ultimately entered in favor of the defendant. The district court concluded that Mr. White's employment relationship with EDS was not covered by the Toussaint doctrine and that Michigan does not recognize a common law cause of action for employment discrimination. Mr. White filed a timely notice of appeal.
 
 II
 
 11
 Under Michigan law, an employment contract is presumed to be terminable at will. Toussaint recognized a limited exception to this presumption when there is an express agreement to terminate only for cause or where statements of company policy and procedure give an employee a legitimate expectation that his employment will only be terminated for cause.
 
 
 12
 Mr. White bases his Toussaint claim on the theory that EDS was bound by GM's employment policies. In this connection, White offers the transcript of a meeting of GM employees and EDS and GM management. White says that the meeting was broadcast to many GM employees, including himself, for the purpose of reassuring them about their employment prospects at EDS. He quotes Ken Reidlinger, a senior vice-president of EDS, who said "are we General Motors employees as well as EDS[?] The answer is yes.... [W]e are all employees of General Motors.... GM is not going to let anything happen to their employees." White also relies on a GM manual entitled "Working with General Motors."
 
 
 13
 Whether or not EDS was bound by GM's employment policies, Mr. White cannot make out a Toussaint claim. When he was reinstated in 1983, he and a representative of GM executed a document entitled "Employment Agreement." Paragraph 2 of that agreement expressly states that "[t]he Employe [sic] acknowledges that his employment under this agreement is from month to month only on a calendar month basis." Paragraph 6 states:
 
 
 14
 "The Employer and the Employe [sic] acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employe [sic] and the Employer."
 
 
 15
 The Michigan Supreme Court has recognized that month-to-month employment is "essentially" an at-will relationship. Ferrett v. General Motors Corp., 438 Mich. 235, 475 N.W.2d 243, 248 (1991). Once Mr. White signed the agreement acknowledging that his employment was month-to-month, he could entertain no legitimate expectation of never being discharged without just cause. Taylor v. General Motors, 826 F.2d 452, 457-58 (6th Cir.1987); Gibson v. General Motors Corp., No. 129103 (Mich.Ct.App. Jan. 28, 1992) (unpublished); Parkinson v. General Motors Corp., No. 125956 (Mich.Ct.App. Aug. 9, 1991) (unpublished); Singal v. General Motors Corp., 179 Mich.App. 497, 505, 447 N.W.2d 152, 156 (1989). By its own terms, the Employment Agreement could only be modified by a new agreement signed by both parties. "Working with General Motors" was not such an agreement.
 
 
 16
 Mr. White argues that he did not understand the significance of a month-to-month contract. Under Michigan law, however, an employee is bound by the language of an employment contract even if he claims not to have understood its meaning. See Scholtz v. Montgomery Ward & Co., Inc., 437 Mich. 83, 468 N.W.2d 845, 848-49 (1991), and Reid v. Sears, Roebuck & Co., 790 F.2d 453, 461 (6th Cir.1986), both citing Sponseller v. Kimball, 246 Mich. 255, 260, 224 N.W. 359 (1929). The district court did not err in entering summary judgment against Mr. White on his Toussaint claim.
 
 III
 
 17
 We next turn to Mr. White's claim that under Michigan law he can maintain a common law action for being discharged in retaliation for assertion of his civil right to be free from employment discrimination.
 
 
 18
 The complaint does not identify White's cause of action as one based on racial discrimination as such; the theory, rather, is one of retaliation. The Michigan Court of Appeals has recently held that the exclusive remedies available to an employee discharged for reporting a violation of the law are the remedies provided by the state Whistleblowers' Protection Act, Mich.Comp.Laws Ann. § 15.362, or by the statute under which the plaintiff filed a complaint or instituted a proceeding. Shuttleworth v. Riverside Osteopathic Hosp., 191 Mich.App. 25, 477 N.W.2d 453 (1991). Mr. White cannot maintain an action under the WPA or Michigan's Elliott-Larsen Civil Rights Act because such an action would be time-barred.
 
 
 19
 Mr. White asks us, however, to recognize a special common law cause of action for racially-motivated retaliatory discharge. He relies upon Pompey v. General Motors Corp., 385 Mich. 537, 189 N.W.2d 243 (1971), in which the Michigan Supreme Court held that a "plaintiff can maintain a civil damage action for redress of his statutorily created right to be free from discrimination in private employment," notwithstanding the absence of a statutory remedy and even though the administrative procedures required by the state civil rights statute have not been complied with. Id., 189 N.W.2d at 255.
 
 
 20
 Michigan enacted the Elliott-Larsen Civil Rights Act in 1977. Unlike previous Michigan civil rights statutes, it gave an aggrieved party direct access to circuit court. The separate common law remedy for racial discrimination recognized in Pompey did not survive enactment of Elliot-Larsen, in our view.
 
 
 21
 The Pompey decision did not create any new substantive common law right to be free from race discrimination in private employment. Rather, the court emphasized that it was merely creating a remedy based upon a statutory right. Pompey, 189 N.W.2d at 251; see Pacheco v. Clifton, 109 Mich.App. 563, 311 N.W.2d 801, 807 (1981), aff'd sub nom. Boscaglia v. Michigan Bell Tel. Co., 420 Mich. 308, 362 N.W.2d 642 (1984). Mr. White argues that the statutory remedies provided in Elliott-Larsen are not exclusive and do not override pre-existing common law remedies, such as the one provided by Pompey. But the remedy provided by Pompey--direct access to the courts for a civil action for damages--was codified by Elliott-Larsen. Mich.Comp.Laws.Ann. § 37.2801; see Holmes v. Haughton Elevator Co., 404 Mich. 36, 272 N.W.2d 550, 552 (1978) (Moody, J., concurring), quoted with approval in Boscaglia, 362 N.W.2d at 645 (recognizing that passage of Elliott-Larsen ushered in the last days of Pompey ). Once access to the courts was provided in Elliott-Larsen, Pompey was subsumed within the statute and could no longer be the source of a cause of action. Mr. White cites no case in which a court allowed a plaintiff to pursue a common law action for employment discrimination after Elliott-Larsen took effect.
 
 
 22
 Even if Mr. White could bring a common law action under Pompey, moreover, such an action would be barred by the three-year limitations period prescribed in Mich.Comp.Laws Ann. § 600.5805(8), which applies to employment discrimination actions. See, e.g., Mair v. Consumers Power Co., 419 Mich. 74, 348 N.W.2d 256 (1984); see generally Marlowe v. Fisher Body, 489 F.2d 1057, 1063 (6th Cir.1973) (pleading a civil rights claim as a breach of contract does not alter the fact that deprivation of civil rights is primarily a violation of personal rights subject to a three-year statute of limitations).
 
 
 23
 Finally, Mr. White claims that the allegedly retaliatory discharge violates an explicit contractual undertaking not to discharge him for retaliatory reasons. This claim is part and parcel of the claim presented in the earlier federal court proceeding, however, and we have no hesitancy in saying that it is barred under the doctrine of res judicata.
 
 
 24
 AFFIRMED.