EIDE v KELSEY-HAYES COMPANY

Docket No. 79637. Submitted May 8, 1986, at Detroit. Decided August 19, 1986. Leave to appeal applied for.

Valerie A. Eide, a former employee of Kelsey-Hayes Company, filed a sexual harassment action against Kelsey-Hayes in Wayne Circuit Court alleging that she was sexually harassed during her employment with Kelsey-Hayes. Craig Eide, Valerie's husband, sought damages for loss of consortium resulting from the alleged sexual harassment suffered by his wife. A jury trial was held, Paul S. Teranes, J., and a verdict was returned in favor of the plaintiffs, awarding Mrs. Eide $240,000 in compensatory damages and $32,000 in exemplary damages. Mr. Eide was awarded $28,000 on his loss of consortium claim. Defendant appealed and plaintiffs cross-appealed.

The Court of Appeals *held*:

1. The trial court adequately instructed the jury concerning Mrs. Eide's claim of sexual harassment. Defendant's proposed jury instructions, which the court refused to give, did not properly state the applicable law and were prejudicial because they would have materially increased the burden of proof the plaintiffs were required to sustain.

2. Defendant's contention that the trial court committed

REFERENCES

Am Jur 2d, Appeal and Error § 894.

Am Jur 2d, Civil Rights §§ 261, 446-448.

Am Jur 2d, Expert and Opinion Evidence §§ 24-32.

Am Jur 2d, Husband and Wife §§ 447-458.

Am Jur 2d, Trial §§ 573-655.

Construction and application of Civil Rights Attorney's Fees Award Act of 1976 (amending 42 USCS § 1988), providing that court may allow prevailing party, other than United States, reasonable attorney's fee in certain civil rights actions. 43 ALR Fed 243.

Necessity of physical injury to support cause of action for loss of consortium. 16 ALR4th 537.

What conduct is wilful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.

Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.

error requiring reversal in its jury instructions by refusing defendant's request that the jury be instructed that a portion of plaintiffs' burden of proof was to establish that defendant did not investigate Mrs. Eide's claims and failed to take remedial action is rejected. Even if plaintiffs were required to demonstrate as part of their burden of proof that defendant did not take prompt remedial measures, the evidence supports the conclusion that it did not. The failure to give the requested instruction, even if error, was harmless because the failure to vacate the jury's verdict would not be inconsistent with substantial justice under the facts of this case.

3. The trial court did not err in permitting a sociologist to testify as an expert witness. The evidence was sufficiently complex so that an expert would be helpful to the jury's understanding of the evidence. The testimony of the sociologist was properly admitted.

4. A loss of consortium claim is cognizable under the Civil Rights Act. The $28,000 award for loss of consortium was proper.

5. Defendant's contention that reversal is required because there is no right to a jury trial under the Civil Rights Act is rejected. A right to a jury trial does exist under the act.

6. The Civil Rights Act does not violate the title-object clause of the Michigan Constitution.

7. A jury may, under the Civil Rights Act, award exemplary damages that are not duplicative of actual damages for injury to feelings provided the plaintiff has established bad faith or malice on the part of the defendant. The trial court's instructions on exemplary damages were entirely proper and did not allow for a double recovery because they compensated Mrs. Eide for a separate and distinct type of injury.

8. Appellate review of defendant's attempt to have the court use a special verdict form is foreclosed since no record was made of the attempt.

9. The trial court did not abuse its discretion in admitting the deposition of a psychiatrist taken in connection with Mrs. Eide's workers' compensation claim.

10. The trial court did not err by allowing plaintiffs' counsel to impeach one of defendant's witnesses with a letter from a co-worker. The letter was properly admitted for impeachment on the issue of prior notice by the plant management of sexual conduct and communication in the plant.

11. Defendant's contention that it is entitled to a credit against the judgment for sickness benefits and workers' compensation benefits which it paid to Mrs. Eide is rejected. Claims

under the Civil Rights Act are independent of claims under the workers' compensation act or for company provided benefits.

12. The trial court did not err in denying plaintiffs' request for attorney fees and costs pursuant to the Civil Rights Act.

13. The trial court did not err in dismissing plaintiffs' claim for intentional infliction of emotional distress.

Affirmed.

1. APPEAL — JURY INSTRUCTIONS.

A trial court's jury instructions must be reviewed as a whole and not in selected excerpts to determine if error has occurred.

2. TRIAL — JURY INSTRUCTIONS.

A trial court, when standard jury instructions do not adequately cover a particular area, is obligated to give additional jury instructions when requested where those instructions properly instruct on the applicable law.

3. TRIAL — JURY INSTRUCTIONS.

It is within a trial court's discretion whether a proposed jury instruction is applicable and accurately states the law.

4. TRIAL — JURY INSTRUCTIONS.

The refusal to give an applicable standard jury instruction will not result in error requiring reversal unless the failure to give the requested instruction so unfairly prejudiced one of the parties that the failure to vacate the jury's verdict would be inconsistent with substantial justice.

5. WITNESSES — EXPERT WITNESSES.

Any person which a trial court determines has recognized scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue may be considered an expert.

6. WITNESSES — EXPERT WITNESSES — APPEAL.

The determination of whether a proposed expert witness is properly qualified is left to the sound discretion of the trial court, the decision of which will not be reversed absent an abuse of discretion.

7. TORTS — LOSS OF CONSORTIUM.

A person may recover damages for loss of consortium caused by injuries wrongfully inflicted upon that person's spouse.

8. CIVIL RIGHTS — DERIVATIVE CLAIMS — LOSS OF CONSORTIUM — DAMAGES.

Damages may be recovered on a derivative loss of consortium

claim under the Civil Rights Act (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.*).

9. CIVIL RIGHTS — DAMAGES — JURY TRIAL.

A person suing for damages under the Civil Rights Act has a right to a jury trial (MCL 37.2801; MSA 3.548[801]).

10. CIVIL RIGHTS — CIVIL RIGHTS ACT — CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE.

The Civil Rights Act does not violate the title-object clause of the Michigan Constitution (Const 1963, art 4, § 24; MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.*).

11. DAMAGES — EXEMPLARY DAMAGES.

A jury, under proper instructions, may award exemplary damages that are not duplicative of actual damages for injury to feelings provided the plaintiff has established bad faith or malice on the part of the defendant.

12. CIVIL RIGHTS — DAMAGES — EXEMPLARY DAMAGES.

Exemplary damages may be recovered under the Civil Rights Act provided the plaintiff establishes the requisite bad faith or malice on the part of the defendant (MCL 37.2801 *et seq.;* MSA 3.548[101] *et seq.*).

13. CIVIL RIGHTS — DAMAGES — WORKERS' COMPENSATION — SICKNESS BENEFITS.

Claims under the Civil Rights Act are independent of claims brought under the Workers' Disability Compensation Act or for company provided benefits; thus, sickness benefits and workers' compensation payments made by a defendant employer to an employee are not creditable against damages awarded to the employee in a sexual harassment action brought against the employer under the Civil Rights Act (MCL 37.2801 *et seq.;* MSA 3.548[101] *et seq.*).

14. CIVIL RIGHTS — ATTORNEY FEES.

The decision whether to award attorney fees under the Civil Rights Act is discretionary with the trial court (MCL 37.2801 *et seq.;* MSA 3.548[101] *et seq.*).

15. CIVIL RIGHTS — ATTORNEY FEES.

Two separate inquiries are necessary to determine whether attorney fees should be granted under the Civil Rights Act: First, the trial court must determine whether to award attorney fees to a successful plaintiff, which decision is left to the court's discretion, and, second, if attorney fees are awarded, they must be in a reasonable amount, determined by considering (1) the

professional standing and experience of the attorney, (2) the skill, time and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and length of the professional relationship with the client (MCL 37.2801 *et seq.;* MSA 3.548[101] *et seq.*).

16. Workers' Compensation — Exclusive Remedy — True Intentional Torts.

A true intentional tort, for which the exclusive remedy provision of the Workers' Disability Compensation Act may or may not bar recovery, committed by an employer against its employee requires the formation by the employer of a specific intention to cause an injury or death, as opposed to mere negligence or even gross negligence; to allege a true intentional tort, the plaintiff must allege that the employer intended the injury itself and not merely the activity leading to the injury (MCL 418.131; MSA 17.237[131]).

*Susan Winshall & Associates, P.C.* (by *Susan Winshall, Thomas Wilczak,* and *Shelley Portney Hutton*), for plaintiffs.

*Berry, Moorman, King, Cook & Hudson* (by *Thomas M. Sullivan* and *Sheryl A. Laughren*), for defendant.

Before: Bronson, P.J., and Gribbs and M. E. Clements,* JJ.

Per Curiam. Plaintiffs filed the present action against the defendant in Wayne Circuit Court under the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* alleging that Valerie Eide was sexually harassed during her employment with the defendant. Craig Eide sought damages for loss of consortium resulting from the sexual harassment suffered by his wife. A jury trial was held and a verdict was returned in favor of the plaintiffs, awarding Mrs. Eide $240,000 in compensatory damages and $32,000 in exemplary dam-

* Circuit judge, sitting on the Court of Appeals by assignment.

ages. Mr. Eide was awarded $28,000 on his loss of
consortium claim. Defendant appeals as of right
and plaintiffs have filed a cross-appeal, with both
sides raising a total of twelve issues. After review-
ing the record, we find that none of the issues
require reversal.

I

Valerie Eide began her employment with the
defendant in January, 1972, at the age of eighteen,
as a line inspector. In 1976, she became a floor
inspector and in 1978, a component inspector in
department TO-3, a predominantly male depart-
ment, on the midnight shift. Her husband also
worked for the defendant on the midnight shift.
After a 1980 strike and layoff, Mrs. Eide was
transferred to the afternoon shift. Ten days later,
on April 10, 1980, she walked out of the plant
never to return. In her complaint, Mrs. Eide
sought damages for sexual harassment based on
an alleged hostile working environment. Her claim
of sexual harassment concerned a period from the
spring of 1979 through April 9, 1980. The claim of
Mr. Eide was derivative in nature and sought
damages for loss of consortium.

Defendant, Kelsey-Hayes Company, located in
Milford, is a small plant which, during the 1979-
1980 period, employed approximately 170 people.
The work force was about fifty percent male and
fifty percent female. Mrs. Eide described the envi-
ronment at the plant as a "zoo." Testimony re-
vealed a mixture of so-called horseplay and alleged
sexual harassment. Mrs. Eide admitted that she
participated in some of the horseplay. Concerning
events which were of a sexual nature, she testified
to the following: a large poster-size picture of a
woman that was totally naked with her legs

spread apart hung on the assembly line; unwelcome touching and requests by foreman Ralph Ives for sex in the first aid room; degrading comments; and a difference between nicknames given to the men and nicknames given to the women.

In the spring of 1979, Mrs. Eide was given the nickname "Fluffy LeBush" by foreman Lynn Sonnenberg. The nickname was based on an ad for a pornographic movie featuring an actress of the same name. From that time on, Mrs. Eide testified, she was referred to as "Fluffy" or "Fluffy LeBush" by her male co-workers and supervisors. On her last day at work, union representative Lloyd Peltier, without Mrs. Eide's knowledge, double-taped an obscene drawing to her back. The drawing was of a nude woman from the waist down with her pubic hair colored red and the name "Fluffy LeBush" underneath. The drawing was allowed to stay on Mrs. Eide's back long enough to allow everyone on the assembly line to see the drawing. Also, prior to this incident, Tim Rowbotham, a foreman at the plant, attempted to handcuff Mrs. Eide to her work station.

At trial, Mrs. Eide alleged that management had knowledge of the various incidents which occurred through her complaints to the shift superintendent, various foremen, the company counseling service and union representatives. None of Mrs. Eide's complaints were investigated until after she left her employment with the defendant. Further, after investigating her complaints, the company concluded that no sexual harassment existed. However, several employees were cited for violating the company policy prohibiting horseplay.

II

Initially, defendant argues that the trial court

failed to adequately instruct the jury concerning Mrs. Eide's claim of sexual harassment. We find no error.

The Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* provides:

> Sec. 202. (1) An employer shall not:
> (a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . . [MCL 37.2202; MSA 3.548(202).]

and,

> (h) Discrimination because of sex includes sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:
>
> \*   \*   \*
>
> (iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(h); MSA 3.548(103)(h).]

Defendant objected to the trial court's failure to give the following requested instructions:

> *Voluntary Participation-Effect*
> If you find Plaintiff, Valerie A. Eide, was involved, appeared to voluntarily participate in, or appeared to consent to conduct similar to that of which she now complains, then all of the claims of both Plaintiffs must fail, and you must return a verdict for Kelsey-Hayes Company.

*Constructive Discharge-Maintenance of Distasteful Environment-Employee's Conduct-Effect*

If you find that Plaintiff, Valerie Eide, appeared to welcome or encourage the alleged wrongful conduct by her own conduct or by appearing to voluntarily participate in or consent to conduct of a similar nature, the employer cannot be held to have constructively discharged Plaintiff through maintenance of distasteful working environment, and the claims of both Plaintiffs must fail, and you must return a verdict for Kelsey-Hayes Company.

*Unwelcome Conduct-Defined*

Unwelcome conduct is conduct which the employee did not appear to solicit, incite, voluntarily participate in, or consent to.

The defendant's proposed instructions closely paralleled the defendant's theory of the case. Defendant asserts that the instructions were necessary because of the substantial testimony concerning Mrs. Eide's participation in horseplay at the plant, which made it appear that she may have voluntarily participated in the complained-of acts.

Instructions of the trial court must be reviewed as a whole and not in selected excerpts to determine if error has occurred. See *Froling v Bischoff,* 73 Mich App 496, 503; 252 NW2d 832 (1977). Few standard civil jury instructions exist in the area of employment discrimination. When the standard jury instructions do not adequately cover a particular area, the trial court is obligated to give additional jury instructions when requested where those instructions properly instruct on the applicable law. *Cornforth v Borman's, Inc,* 148 Mich App 469, 475; 385 NW2d 645 (1986). It is within the trial court's discretion whether a proposed instruction is applicable and accurately states the law. *Cox v LaLonde,* 101 Mich App 342; 300 NW2d 564 (1980), lv den 412 Mich 875 (1981). Further, the refusal to give even an applicable standard jury

instruction will not result in error requiring reversal unless the failure to give the requested instruction so unfairly prejudiced one of the parties that the failure to vacate the jury's verdict would be inconsistent with substantial justice. *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985).

In this case, we find that defendant's proposed instruction did not properly state the applicable law and therefore was properly denied. The Civil Rights Act states that the complained-of conduct or communication must be unwelcome. The term unwelcome is not further defined in the act. The trial court in this case instructed the jury that, pursuant to the act, sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature. Further definition was not required. Defendant's instructions would equate the term unwelcome with *not appearing to consent* and not appearing to participate in. We do not believe that that was what the Legislature intended by use of the term unwelcome. One can appear to consent while still finding the conduct or communication unwelcome. *Bundy v Jackson,* 205 US App DC 444; 641 F2d 934 (1981).

Also, in our opinion, the defendant's instructions were prejudicial because they would have materially increased the burden of proof the plaintiffs were required to sustain. Moreover, the trial court did instruct the jury on the defendant's theory of the case, which included its argument that Mrs. Eide had consented and voluntarily participated in the complained-of or similar conduct and communication. Therefore, we find no error in the court's refusal to give defendant's proposed instructions.

Defendant also claims that the trial court committed error requiring reversal in its jury instruc-

tions by refusing defendant's request that the jury be instructed that a portion of plaintiffs' burden of proof was to establish that defendant did not investigate Mrs. Eide's claims and failed to take remedial action. In *Coley v Consolidated Rail Corp*, 561 F Supp 645 (ED Mich, 1982), then Federal District Court Judge Patricia Boyle held that plaintiffs in Title VII sexual harassment cases have the burden of establishing: (1) that they belong to a protected group; (2) that they were subjected to unwelcome sexual harassment; (3) that the harassment complained of was based on sex; (4) that the harassment affected a term or condition of employment or created an intimidating, hostile or offensive environment; and (5) respondeat superior. These factors constitute a prima facie case of sexual harassment under Title VII. See, also, *Langlois v McDonald's Restaurants of Michigan, Inc*, 149 Mich App 309, 312-313; 385 NW2d 778 (1986).

. Concerning sexual harassment based on a hostile work environment, Judge Boyle held that a plaintiff must demonstrate that the employer had actual or constructive notice of the offensive environment. Once notice is shown, the employer has a duty to investigate promptly and take remedial action as of when it first received knowledge or should have received knowledge of the alleged hostile work environment.

In the present case, when instructing on constructive discharge, the judge instructed the jury that defendant could avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the sexual conduct and communication in the workplace. However, on appeal, the parties dispute whether the duty to take remedial action is an affirmative defense, as alleged by the plaintiffs based on *Coley,* or whether the failure to take remedial action is part

of plaintiffs' prima facie case, as asserted by the defendant based on *Henson v City of Dundee,* 682 F2d 897 (CA 11, 1982). After reviewing the record, we find it unnecessary to resolve this burden of proof issue.

Defendant states that it did take prompt remedial measures and conducted a full investigation and warned its supervisors that future horseplay would not be tolerated. However, defendant admits that it took this action only after the incidents of April 9, 1984, which caused Mrs. Eide to walk out of the plant. Thus, no investigation or remedial measures were taken until after the time when the jury found Mrs. Eide had been constructively discharged. Further, most of the incidents complained of by Mrs. Eide were perpetrated upon her by her supervisors. She testified that when she initially complained, no action was taken. Since her supervisors were involved, as opposed to co-employees, notice to the employer is presumed. *Vinson v Taylor,* 243 US App DC 323; 753 F2d 141 (1985); *Miller v Bank of America,* 600 F2d 211 (CA 9, 1979).

Therefore, even if plaintiffs were required to demonstrate as part of their burden of proof that defendant did not take prompt remedial measures, the evidence supports the conclusion that it did not. Thus, we conclude that the failure to give the requested instruction, even if error, must be considered harmless because the failure to vacate the jury's verdict would not be inconsistent with substantial justice under the facts of this case. *Johnson, supra.*

Next, defendant claims that the trial court erred in admitting the testimony of a sociologist as an expert witness. Defendant asserts that the testimony of plaintiffs' expert, Dr. James Gruber, was inappropriate, without foundation, and highly prej-

udicial because his testimony invaded the province of the judge and jury by going to the ultimate factual and legal conclusions.

An expert is considered any person which the trial court determines has recognized scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. MRE 702; *Strzelecki v Blaser's Lakeside Industries of Rice Lake, Inc,* 133 Mich App 191, 198; 348 NW2d 311 (1984). The determination of whether a proposed expert witness is properly qualified is left to the sound discretion of the trial court, the decision of which will not be reversed absent an abuse of discretion. *Dybata v Kistler,* 140 Mich App 65, 68-69; 362 NW2d 891 (1985).

Here, the trial court determined that plaintiffs' expert witness was qualified as an expert witness in the area of sexual harassment. Dr. Gruber had been teaching in the area relating to the subject for a number of years and had published books and articles on the subject. He also testified that he was familiar with the extensive body of research and literature regarding sexual harassment. We do not believe that the trial court abused its discretion in deciding that Dr. Gruber was qualified as an expert.

After reviewing the record we also conclude that the evidence was sufficiently complex so that an expert would be helpful to the jury's understanding of the evidence. Little case law exists in the area of sexual harassment based on the creation of an offensive, hostile and intimidating environment which allows the sexual conduct to exist. Further, sexual harassment can take many forms and is often very subtle. Here, Dr. Gruber illuminated for the jury the type of environment that existed in the defendant's plant and testified to the sexual

connotations of several of the acts of which plaintiff complained. To the extent that the defendant disagreed with Dr. Gruber's testimony, it was free to, and did, question him on cross-examination and attempt to undermine his testimony. Defendant's brief on appeal reveals that it simply does not agree with Dr. Gruber's interpretation of the facts or his conclusions, which is not the test as to whether his testimony was admissible. Therefore, we hold that Dr. Gruber's testimony was properly admitted. See *O'Dowd v Linehan,* 385 Mich 491, 509-510; 189 NW2d 333 (1971); MRE 704. The jury was certainly free to accept or reject his testimony.

As part of its verdict, the jury awarded plaintiff Craig Eide $28,000 for loss of consortium. Mr. Eide's loss of consortium claim was derivative of Mrs. Eide's statutory claim of sexual harassment. While it is clear that Michigan law permits a loss of consortium claim in a negligence action, *Oldani v Lieberman,* 144 Mich App 642, 645; 375 NW2d 778 (1985), defendant argues that such a claim is not cognizable under the Civil Rights Act. We disagree.

In *Ledsinger v Burmeister,* 114 Mich App 12, 26; 318 NW2d 558 (1982), the Court held that, since the plaintiffs had stated a valid cause of action under the Civil Rights Act, the spouse had a viable derivative cause of action for a loss of consortium claim under the act. The Court based its conclusion under the act on the reasoning that Michigan law clearly recognizes and allows recovery for loss of consortium caused by injuries wrongfully inflicted on that person's spouse. *Id.,* p 26.

Defendant argues that such a claim is not viable based on *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308; 362 NW2d 642 (1984). In *Boscaglia,* the Court held that the Fair Employment Prac-

tices Act, which was repealed by passage of the Civil Rights Act, did not provide a derivative cause of action for loss of consortium as a result of an employer's violation of the FEPA. The Court based its conclusion on the absence of a legislative intent to provide such a derivative cause of action. However, the Court in *Boscaglia* specifically limited its holding to the FEPA.

Although not deciding the issue now before the Court, the *Boscaglia* Court did indicate how it might interpret the language of the Civil Rights Act:

> The civil rights act provides that "[a] person alleging a violation of this act may bring a civil action for . . . damages," with "damages" being defined as "damages for injury or loss caused by each violation of this act . . . ." MCL 37.2801; MSA 3.548(801). See fn 3. This provision may be read as encompassing a derivative action for loss of consortium or injury to the marital relationship. [*Boscaglia, supra,* p 324, n 23.]

We agree with the decision in *Ledsinger* and the dicta in *Boscaglia* that the language of the Civil Rights Act was intended to include a derivative loss of consortium claim among the damages that could be recovered. Therefore, the award of $28,-000 for Craig Eide's loss of consortium was proper.

Defendant next argues that reversal is required because there is no right to a jury trial under the Civil Rights Act. To the contrary, this Court has recently held that such a right does exist under the act. See *Smith v University of Detroit,* 145 Mich App 468, 474-477; 378 NW2d 511 (1985); *Marsh v Civil Service Dep't,* 142 Mich App 557, 569-570; 370 NW2d 613 (1985). The arguments raised by the defendant in support of its position have been previously rejected by this Court.

Alternatively, defendant also argues that the Civil Rights Act is unconstitutional as a violation of the title-object clause of the Michigan Constitution. Mich Const 1963, art 4, § 24. This argument has also been rejected by this Court. See *Seals v Henry Ford Hospital,* 123 Mich App 329; 333 NW2d 272 (1983); *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785; 369 NW2d 223 (1985). Defendant has raised no new arguments which would warrant a different conclusion.

Defendant further contends that exemplary damages are not available to a plaintiff who alleges a violation of the Civil Rights Act. According to the defendant, since plaintiffs' request for compensatory damages permitted a recovery for mental anguish and emotional distress, an instruction on exemplary damages covering essentially the same injuries was redundant and the award based on such instructions allowed for an impermissible double recovery. We disagree.

Concerning plaintiffs' claim for compensatory damages, the trial court in the present case instructed the jury to consider the following elements of damages: physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, or mortification. As to exemplary damages, the jury was instructed that if they found the conduct of the defendant was *malicious* or in *reckless disregard* of Mrs. Eide's rights, they could award exemplary damages. The jury was further informed that such damages represented the amount by which they could *increase* any award of compensatory damages to Mrs. Eide in accordance with the degree of wantonness or recklessness in the defendant's behavior.

Defendant relies on *Veselenak v Smith,* 414 Mich 567; 327 NW2d 261 (1982), in support of its

position that recovery of exemplary damages under the Civil Rights Act is impermissible. We find this reliance misplaced. In *Veselenak,* our Supreme Court clearly limited itself to negligence actions when it held that an award of exemplary damages for injury to feelings is duplicative of an award for ordinary damages for mental distress and anguish. The Court, however, distinguished cases of intentional torts, or other intentional, malicious acts, where it has allowed an award of exemplary damages. *Id.,* pp 574-575.

Moreover, in *Peisner v Detroit Free Press Inc,* 421 Mich 125; 364 NW2d 600 (1984), the Court held in the libel context that if common-law malice is shown, the incremental injury to feelings attributable to such malice can be compensated by an award of exemplary and punitive damages, increasing the award of actual or compensatory damages. *Id.,* pp 142-143. With regard to *Veselenak,* the Court stated:

> Our holding today does not conflict with our ruling in *Veselenak* . . . that actual damages and exemplary damages in the medical malpractice context necessarily overlap . . . .
>
> * * *
>
> We avoid that overlap, however, by defining exemplary and punitive damages as compensating only the *incremental* injury to feelings attributable to defendant's malice. [*Peisner, supra,* p 134, n 10, 141. Emphasis in original.]

Thus, it is apparent that, under proper instructions, a jury may award exemplary damages that are not duplicative of actual damages for injury to feelings provided the plaintiff has established bad faith or malice on the part of the defendant. See *Will v Dep't of Civil Service,* 145 Mich App 214, 226; 377 NW2d 826 (1985).

In this case, the jury found that defendant's conduct was malicious and in reckless disregard of Mrs. Eide's rights. The trial court had instructed the jury that if they found defendant's conduct was malicious, they could award exemplary damages to compensate Mrs. Eide for the *added* injury to her feelings as a result of the egregious conduct of the defendant. Thus, we believe that this is exactly the type of situation where exemplary damages are available. The trial court's instructions on exemplary damages were entirely proper and did not allow for a double recovery because they compensated Mrs. Eide for a separate and distinct type of injury. See *Freeman v Kelvinator, Inc,* 469 F Supp 999 (ED Mich, 1979).

The remaining issues raised by the defendant, which we find to be without merit, do not require extensive discussion. First, since no record was made of defendant's attempt to have a special verdict form used, appellate review of this issue is foreclosed. *Swartz v Dow Chemical Co,* 414 Mich 433, 445-446; 326 NW2d 804 (1982). We also find no abuse of discretion on the part of the trial court in admitting the deposition of a psychiatrist taken in connection with Mrs. Eide's workers' compensation claim. See *Moody v Pulte Homes, Inc,* 423 Mich 150, 161-162; 378 NW2d 319 (1985). Nor did the trial court err by allowing plaintiffs' counsel to impeach one of defendant's witnesses with a letter from a co-worker. The letter was properly admitted for impeachment on the issue of prior notice by the plant management of sexual conduct and communication in the plant. Finally, we reject defendant's contention that it is entitled to a credit against the judgment for sickness benefits and workers' compensation benefits which it paid to the Mrs. Eide. Claims under the Civil Rights Act are independent of claims under the workers'

compensation act or for company provided benefits. *Slayton v Michigan Host, Inc,* 144 Mich App 535, 558; 376 NW2d 664 (1985).

Therefore, after reviewing the record and the issues raised by the defendant, we find none that require reversal and, accordingly, we affirm the judgment in favor of the plaintiffs.

III

On cross-appeal, the plaintiffs raise two issues. First, plaintiffs argue that the trial court erred in denying their request for attorney fees and costs pursuant to the Civil Rights Act. While denying plaintiffs' request for attorney fees under the act, the trial court did award the plaintiffs $12,500 in attorney fees and $2,090 in costs under the Wayne Circuit Court mediation rule. Plaintiffs assert that they were entitled to attorney fees under the Civil Rights Act as well.

The decision whether to award attorney fees under the Civil Rights Act is discretionary with the trial court. MCL 37.2802; MSA 3.548(802); *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 800-801; 369 NW2d 223 (1985); *King v General Motors Corp,* 136 Mich App 301, 307; 356 NW2d 626 (1984), lv den 422 Mich 871 (1985). Here, the trial court based its decision on whether to grant or deny attorney fees on the following factors:

This Court finds that the factors to be considered when determining whether costs and attorney fees should be awarded under MCL 37.2802 are: whether their action enforced a single violation of private rights under civil rights laws for which the plaintiffs were adequately compensated, the defendant's conduct occurred in an isolated setting and was not indicative of broad violation of rights

generally affecting the public, the plaintiffs' chance of success was sufficiently high to enable them to attract competent counsel who was undeterred by the prospect of having to look to the plaintiffs for payment of fees, adequate compensation to counsel was provided from the recovery and there was no evidence that the defendant defended suit in bad faith.

In explaining its decision, the trial court adopted the reasoning set forth in *Buxton v Patel,* 595 F2d 1182, 1185 (CA 9, 1979). The trial court distinguished in its opinion class actions and cases seeking injunctive relief where it would be difficult for the aggrieved party to obtain and compensate competent counsel without some guarantee that they could recover attorney fees and costs if successful. The trial court noted that the present case was different because it involved private plaintiffs seeking damages on their own behalf pursuant to a contingent fee arrangement. Plaintiffs' counsel stands to receive one-third of the $300,000 jury award and interest plus the attorney fees and costs already awarded under the local mediation rule.

Plaintiffs make numerous policy arguments in support of their position that attorney fees should be awarded. See *King, supra,* pp 307-308. Plaintiffs also rely on federal cases interpreting the right to attorney fees in a civil rights action brought under 42 USC 1983. See *Hensley v Eckerhart,* 461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983); *Northcross v Bd of Ed of Memphis City Schools,* 611 F2d 624 (CA 6, 1979). Plaintiffs reason that, in order to vindicate the legislative purpose of the Civil Rights Act, an awarding of attorney fees is virtually required, with only the proper amount left to the discretion of the trial court based on the factors set forth in *Wood v Detroit Automobile*

*Inter-Ins Exchange,* 413 Mich 573, 588; 321 NW2d 653 (1982). Although a strong argument is made by plaintiffs' counsel, we remain unpersuaded.

To determine whether attorney fees should be granted under the Civil Rights Act, two separate inquiries are necessary. First, the trial court must determine whether to award attorney fees to a successful plaintiff. This decision is left to the court's discretion. *Jenkins, supra.* Second, if attorney fees are awarded, they must be in a reasonable amount determined by applying the factors in *Wood, supra.* Plaintiffs would skip the first inquiry entirely, presuming that attorney fees should always be awarded, with only the amount left to the court's discretion. We disagree. Further, the federal authorities plaintiffs cite in favor of their position are distinguishable because they involve situations where the plaintiff is acting as a private attorney general and seeking primarily injunctive relief. In such a case, attorney fees should normally be awarded because otherwise such discriminatory practices could not be effectively eradicated.

In this case, however, we cannot say that the trial court abused its discretion in denying plaintiffs attorney fees under the Civil Rights Act. The trial court examined a number of factors in reaching its conclusion. While the court noted the presence of a contingent fee agreement, the court did not solely rely on that factor. Among other things, the court noted that this was not a case where injunctive relief was sought and thus was not a case where it might not be possible for the attorney to obtain compensation absent an award of attorney fees. Although we find some merit to the plaintiffs' argument that attorney fees should ordinarily be awarded in order to fulfill the purpose of

the Civil Rights Act, we cannot say that there was an abuse of discretion under the facts of this case.

Plaintiffs' remaining claim is that the trial court erred in dismissing their claim for intentional infliction of emotional distress. The court dismissed the claim based on the exclusive remedy provision of the Workers' Disability Compensation Act. Plaintiffs maintain that Mrs. Eide's claim for intentional infliction of emotional distress falls outside the coverage of the workers' compensation act because it alleges an intentional tort.

As plaintiff correctly points out, various panels of this Court have held that the exclusive remedy provision of the WDCA does not bar recovery in circuit court for an injury arising from an intentional tort. *Beauchamp v Dow Chemical Co,* 140 Mich App 699, 702-703; 364 NW2d 286 (1984), lv gtd 422 Mich 939 (1985), and cases cited therein. Other panels, however, have declined to recognize a separate exception to the exclusive remedy provision for intentional torts. *Genson v Bofors-Lakeway, Inc,* 122 Mich App 470, 478; 332 NW2d 507 (1983). Thus, there is some doubt as to whether such an exception does exist. *Leonard v All-Pro Equities,* 149 Mich App 1, 5; 386 NW2d 159 (1986). Clearly, if there is no intentional tort exception, plaintiffs' claim in the present case would be barred by the exclusive remedy provision.

However, even in cases where the intentional tort exception has been recognized, it has been required that the tort be a "true" intentional tort. *Leonard, supra,* p 7. A true intentional tort has been defined as the formation by the employer of a *specific intention* to cause an injury or death, as opposed to mere negligence or even gross negligence. *Schutt v Lado,* 138 Mich App 433, 437; 360 NW2d 214 (1984). Moreover, to allege a true intentional tort "the plaintiff must allege that the

employer intended the injury itself and not merely the activity leading to the injury." *Barnes v Double Seal Glass Co, Inc,* 129 Mich App 66, 80-81; 341 NW2d 812 (1983) (T. M. Burns, P.J., concurring).

In this case, we do not believe that plaintiffs' claim of intentional infliction of emotional distress alleged a true intentional tort. While plaintiffs have alleged that the acts of sexual harassment were intended, they have not alleged that defendant intended Mrs. Eide's damages and injuries. Consequently, even assuming that an intentional tort exception exists, plaintiffs' allegation of intentional infliction of emotional distress was properly dismissed. Although the trial court did not base its conclusion on the same reasoning, we find no reason to reverse given our resolution of this issue. Therefore, we are of the opinion that the issues raised by the plaintiffs on cross-appeal are also without merit.

Affirmed.