**Robert KINDIG, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation, and Allen–Bradley Company, Inc., a foreign corporation, jointly and severally, Defendants.**

**No. 87–73536.**

United States District Court,
E.D. Michigan, S.D.

March 15, 1989.

F.Supp. 289 (E.D.Mich.1989). To the extent that today's decision is inconsistent with *Merrell,* the Court declines to follow it.

Stephen Fellows, Southfield, Mich., for plaintiff.

Terence V. Page, Clark, Hardy, Lewis, Pollard & Page, Birmingham, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is an age discrimination case under Michigan's Elliott–Larsen Civil Rights Act, Mich.Stats.Ann. sec. 3.548(101) *et seq.* [M.C.L.A. § 37.2101 et seq.]. On November 17, 1988, a jury returned a verdict in favor of plaintiff for $325,000. On March 10, 1989, the Court denied defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial. Now before the court is plaintiff's petition for costs and attorney's fees as a prevailing party under Mich.Stats.Ann. sec. 3.548(802) [M.C.L.A. § 37.2802]. Plaintiff requests fees totalling $50,900 representing 255 hours of work at the rate of $200 an hour and costs in the amount of $574.70. Defendant does not object to the costs or the hours of work. Defendant says $200 an hour is excessive and in all events plaintiff is not entitled to an award of attorney's fees given the amount of the verdict, the nature of the case, and the existence of a contingency fee agreement between plaintiff's counsel and his client.[1] For the reasons which follow, plaintiff's motion for attorney's fees and costs is GRANTED at a reduced rate of $125 an hour.

### II.

Defendants' argument that plaintiff petition for attorney's fees should be denied is rejected. In support of his argument, defendant cites *Eide v. Kelsey–Hayes Company,* 154 Mich.App. 142, 397 N.W.2d 532 (1986), *aff'd. on other grounds,* 431 Mich.

---

1. Although it was not stated in the parties' papers, plaintiff's counsel acknowledged during oral argument that he has a one-third contingency fee agreement with his client.

26, 427 N.W.2d 488 (1988), and *Jenkins v. American Red Cross,* 141 Mich.App. 785, 369 N.W.2d 223 (1985).[2] These cases, however, are not binding on this Court. Moreover, the Michigan Court of Appeals' reasoning in these cases has been repudiated by the vast majority of courts considering the same question and this Court is in agreement with the majority.

### A.

Defendant contends that in cases where civil rights plaintiffs represented pursuant to contingency fee agreements recover substantial money damages, an award of attorney's fees would be inappropriate, *citing Eide v. Kelsey–Hayes Co., supra.* In *Eide,* a panel of the Michigan Court of Appeals held that a trial court did not abuse its discretion by denying attorney's fees to a prevailing plaintiff in an Elliott–Larsen sexual harassment case. The panel found that the considerations relied upon by the trial court, i.e. the availability of competent counsel in a damages action, the existence of a contingency fee arrangement, and the size of the award, did not exceed the statutory discretion entrusted to trial courts under Elliott–Larsen. Defendant also relies on *Jenkins v. American Red Cross, supra,* another Michigan Court of Appeals decision summarily affirming a trial court's denial of an Elliott–Larsen attorney's fee application where plaintiff enjoyed considerable success at trial.

These cases, however, do not state the law of Michigan. The Michigan Court of Appeals remains sharply divided on the question of when an award attorney's fees is appropriate under Elliott–Larsen. In *King v. General Motors Corp.,* 136 Mich. App. 301, 306–08, 356 N.W.2d 626 (1984), a different panel of the Court of Appeals held that a trial court abused its discretion by denying a prevailing Elliott–Larsen plaintiff attorney's fees on the grounds of the availability of competent counsel and a contingency fee agreement. The panel's reasoning was diametrically opposed to that of *Eide.*

It is well settled that panels of the Court of Appeals are courts of equal authority, and a decision of one does not overrule a prior decision of another. *Hackett v. Ferndale City Clerk,* 1 Mich.App. 6, 11, 133 N.W.2d 221 (1965). Rather, conflicting decisions among panels negate the binding authority of each until the Michigan Supreme Court acts to resolve the conflict. *In re Bay County Prosecutor,* 102 Mich. App. 543, 549, 302 N.W.2d 225 (1980). Under such circumstances, a trial court is entitled to choose which line of authority it wishes to follow. *Tebo v. Havlik,* 418 Mich. 350, 379 n. 15, 343 N.W.2d 181 (1984) (Levin, J., dissenting). *See also In re Matter of Hague,* 412 Mich. 532, 552, 315 N.W. 2d 524 (1982).[3]

---

**2.** Defendant also cites an unpublished Sixth Circuit opinion summarily affirming a district court order denying fees. *Willoughby v. Children's Hospital,* 787 F.2d 594 (6th Cir.1986). Where, as here, the Michigan Supreme Court has not ruled on the particular question at issue, a decision of the Sixth Circuit construing a provision of Michigan law would ordinarily be binding on this Court. However, for the reasons which follow, it appears that this particular decision would no longer be considered good law and thus the Court does not feel obligated to follow it.

**3.** The possibility that different panels of the Michigan Court of Appeals would sometimes reach conflicting decisions has long been recognized. *See e.g. Solomon v. Highland Park,* 64 Mich.App. 433, 436, 236 N.W.2d 94 (1975) ("... [w]e are not bound [by a conflicting Court of Appeals decision] as our panels may and not infrequently do disagree.") The Michigan Su-

preme Court has recently promulgated an Administrative Order setting out a procedure whereby such conflicts may be authoritatively resolved.

When a panel of the Court of Appeals has issued an opinion which a majority of the panel has concluded is in conflict with a prior decision of the Court of Appeals, that panel shall certify that its opinion is in conflict with the cited prior decision.... The Supreme Court will, within 30 days after the expiration of the time for filing by the parties, take whatever action it deems appropriate in the case, including but not limited to, granting leave to appeal on its own motion, peremptory disposition, or, in a specific case, authorizing the Court of Appeals to sit *en banc* to resolve the conflict.

Administrative Order No. 1984–2, *Resolution of Conflicts in Court of Appeals Decisions,* 418 Mich. lxxxii (1985). *See also* Note, *The Estoppel Effect of Misconduct Findings in Unemployment*

## B.

■ In the absence of any guiding authority by the state appellate courts, the duty of a federal court sitting in diversity is to try to predict what the state's highest court would rule. *Clutter v. Johns–Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir.1981). The court must ascertain from all available data what the state law is and apply it.[4] *Baily v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985). Having reviewed the reasoning and analysis of *Eide*, as well as its precedential basis, the Court is convinced that the decision is fundamentally flawed and that the Michigan Supreme Court will not follow it.

■ The decision in *Eide* was based on two federal cases discussing the appropriateness of attorney's fees in 42 U.S.C. sec. 1988 cases, *Buxton v. Patel*, 595 F.2d 1182 (9th Cir.1979) and *Zarcone v. Perry*, 581 F.2d 1039 (2d Cir.1978).[5] In *Zarcone*, the Court of Appeals for the Second Circuit upheld a district court's denial of 42 U.S.C. sec. 1988 attorney's fees to a civil rights plaintiff winning a substantial money judgment. The court held that the determining factor in whether to award attorney's fees under the act is whether a litigant in plaintiff's position would be deterred from seeking to enforce civil rights without an assurance that his attorney's fees would be paid.

*Id.* at 1044. The court noted that while attorney's fees would ordinarily be appropriate in injunctive actions, where no money judgment would be forthcoming, they would not in damages action. *Id.* at 1044. Where the prospects for success are "sufficiently bright to attract competent counsel," attorney's fees need not be awarded. *Id.* In *Buxton*, the Ninth Circuit Court of Appeals adopted *Zarcone's* "bright prospects" test, holding that a denial of Section 1988 attorney's fees was appropriate where a case involved a single civil rights violation, not indicative of a broad violation of rights generally affecting the public and where the award was sufficient to attract competent counsel. *Id.* 595 F.2d at 1185.

Since these two early cases were decided, virtually every federal court considering the question has repudiated both their holding and rationale as contrary to the federal scheme for the enforcement of civil rights. The "bright prospects" approach articulated in *Zarcone* and embraced in Michigan by *Eide*, has been expressly rejected by the Courts of Appeal in the First Circuit, *Sargeant v. Sharp*, 579 F.2d 645 (1st Cir.1978), Fifth Circuit, *Gibbs v. Town of Frisco, Alabama*, 626 F.2d 1218 (5th Cir.1980), Seventh Circuit, *Sanchez v. Schwartz*, 688 F.2d 503 (7th Cir.1982), and Tenth Circuit,

*Compensation Adjudications on Future Civil Suits for Wrongful Discharge*, 34 Wayne L.Rev. 1695, 1702–03 n. 52 (1988). Apparently this procedure was not employed in either the *Jenkins* or *Eide* cases.

4. Michigan courts have traditionally looked to analogous federal precedents in construing its own civil rights statutes. *Bryant v. Automatic Data Processing, Inc.*, 151 Mich.App. 424, 429, 390 N.W.2d 732 (1986); *Civil Rights Commission v. Chrysler Corp.*, 80 Mich.App. 368, 375 n. 4, 263 N.W.2d 376 (1977). *See also Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586 (1986). Indeed, both the trial court and Court of Appeals opinions in *Eide v. Kelsey–Hayes, supra*, relied heavily on federal precedent in making their decisions. This should not be surprising given the strong similarity between the federal attorney's fee statute, 42 U.S.C. sec. 1988, and Michigan's Elliott–Larsen fee provision, Mich.Stats.Ann. sec. 3.548(802), [M.C.L.A. § 37.2802].

The fee provision in Elliott–Larsen reads in part:

A court ... may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate.

Mich.Stats.Ann. sec. 3.548(802) [M.C.L.A. § 37.2802]. The Comparable provision under federal law reads in relevant part:

In any action or proceeding to enforce a provision of sections.... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

42 U.S.C. sec. 1988. The Court sees no significant difference between the two statutes except that under federal law, a prevailing defendant may petition for attorney's fees. Thus, federal precedents construing 42 U.S.C. sec. 1988 are both relevant and probative of the approach that the Michigan Supreme Court will ultimately take regarding the award of attorney's fees under Elliott–Larsen.

5. *Zarcone* was cited in the trial court opinion in *Eide*. *See Eide v. Kelsey–Hayes Company*, CA

*Cooper v. Singer,* 719 F.2d 1496 (10th Cir. 1983) (en banc). The reasons for this almost universal criticism are aptly stated by the Seventh Circuit in *Sanchez, supra:*

> [the attorney's fees statute] apparently had three main aims—opening the courts to civil rights plaintiffs, penalizing obstructive litigation by civil rights defendants, and generally deterring civil rights violations—and the "bright prospects" standard at best serves only the first.

*Id.* at 505. [footnotes omitted].

In addition to widespread criticism among the Circuits, two Supreme Court decisions since *Zarcone* and *Buxton* have expressly rejected the "bright prospects" approach and call the continued viability of those cases into question. In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court reaffirmed its earlier statement in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), that a prevailing plaintiff in a civil rights action "should ordinarily recover an attorney's fee unless special circumstances would make such an award unjust." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. It was precisely this presumption in favor of awarding an attorney's fee that the Second Circuit described as a "wooden" application of the statute "without consideration of the underlying factors which generated it." *Zarcone, supra* at 1044. Most recently, in *Blanchard v. Bergeron,* — U.S. —, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the Supreme Court flatly rejected the notion that the existence of a contingency fee agreement could constitute grounds for denial of a Section 1988 attorney's fee.

It is true that the purpose of section 1988 was to make sure that competent counsel was available to civil rights plaintiffs, and it is of course arguable that if a plaintiff is able to secure an attorney on the basis of a contingent or other fee agreement, the purpose of the statute is served and the plaintiff is bound by his contract. On that basis, however, plaintiff should recover nothing from defendant, *which would be plainly contrary to the statute.* And Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to so by the court.

*Id.* — U.S. at —, 109 S.Ct. at 944. [emphasis added]. The *Blanchard* court also repudiated *Zarcone's* distinction between generally awarding fees in injunctive suits while declining to award them in damage suits.

> Section 1988 makes no distinction between actions for damages and suits for equitable relief. Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and society at large, irrespective of whether the action seeks monetary damages.

*Id.,* — U.S. at —, 109 S.Ct. at 945. The Supreme Court noted that such a distinction would create an artificial incentive to recover damages in civil rights actions at the expense of injunctive remedies which might better serve the public interest. *Id.*

In light of the overwhelming weight of authority critical of *Zarcone* and *Buxton,* and especially after *Hensley* and *Blanchard,* it is difficult to imagine what, if anything, remains of the "bright prospects" rule in attorney's fees jurisprudence.[6] Ac-

---

No. 80–045–144CZ (Wayne County Circuit Court, May 7, 1984).

**6.** There is some question whether even the Second and Ninth Circuits would continue to adhere to *Zarcone* and *Patel.* In *Hamner v. Rios,* 769 F.2d 1404 (9th Cir.1985), the Ninth Circuit Court of Appeals observed that

> ... *Hensley* undermines the language in *Buxton v. Patel* stating that courts should be more cautious in awarding fees where damages are sought and where the prospects for success are bright. 595 F.2d 1184–85. *Hensley* overrules *Buxton v. Patel* to the extent that the

latter is inconsistent with the ruling in *Hensley* that prevailing civil rights plaintiffs are ordinarily entitled to attorney's fees.

*Id.* at 1407. *See also Wheatley v. Ford,* 679 F.2d 1037 (2d Cir.1982). There, the Second Circuit upheld a district court's award of section 1988 attorney's fee despite the award of a money judgment and the existence of a contingency fee agreement. The court held that even a plaintiff suing for money damages "might well be deterred from pursuing his claim, absent some provision for attorney's fees." *Id.* at 1040. *See also Milwe v. Cavuoto,* 653 F.2d 80 (2d Cir. 1981).

cordingly, it is highly unlikely that the Michigan Supreme Court would adopt the thoroughly discredited bright prospects rule of *Eide v. Kelsey–Hayes, supra,* as the relevant test of the appropriateness of attorney's fee awards under Elliott–Larsen. Rather, the Court believes that the Michigan Supreme Court will ultimately hold that Elliott–Larsen fees should ordinarily be granted to prevailing plaintiffs, except where special circumstances would make such an award unjust. This rule, recently reaffirmed by the United States Supreme Court in *Blanchard, supra,* is fair and reasonable and aptly promotes the sound operation of the state's civil rights laws.

### III.

■ Neither party has offered any assistance in deciding on a reasonable hourly rate. As a consequence, the Court will look to a recently published study for the State Bar of Michigan as authoritative. Plaintiff's attorney practices in South Oakland County and has had 15 years of experience. Exhibit 19 of the study suggests that $125 an hour is a reasonable hourly rate under the circumstances of this case, taking into consideration the delay in payment. Accordingly, plaintiff is awarded an attorney's fee of $32,875 plus costs of $574.70.

### IV.

In light of the foregoing, plaintiff's motion for fees is GRANTED and a total fee of $33,449.70 is AWARDED, representing a fee of $125 an hour for 255 hours of work plus costs of $574.70.

SO ORDERED.