Karl D. BROCKLEHURST, Plaintiff,

v.

PPG INDUSTRIES, INC., Defendant.

No. 92–CV–76429–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 12, 1995.

trates in their determinations whether probable cause exists to issue arrest warrants.

Jamil Akhtar, Birmingham, Michigan, for plaintiff.

James R. Kohl, Detroit, Michigan, for defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

ROSEN, District Judge.

On December 6, 1993, a jury returned a verdict for Plaintiff Karl D. Brocklehurst ("Plaintiff") in the amount of $1,527,100, finding that Defendant PPG Industries, Inc. ("Defendant"), had terminated Plaintiff's employment in violation of Michigan's Elliott–Larsen Civil Rights Act. The Court entered a judgment based on that verdict on February 7, 1994. By opinion and order issued on October 26, 1994, this Court ordered a remittitur to the amount of $528,818, and also awarded $2,358.15 in costs to Plaintiff. On July 13, 1995, Plaintiff accepted this remittitur, and this Court accordingly entered a judgment awarding Plaintiff $528,818 plus $2,358.15 in costs.

By motion filed August 2, 1995, Plaintiff now seeks an award of attorneys' fees and additional costs, and also seeks clarification of the amount of interest owed to him. For the reasons set forth below, the Court declines to award attorneys' fees to Plaintiff.

## I. EXERCISING THE DISCRETION CONFERRED BY MICHIGAN'S ELLIOTT–LARSEN CIVIL RIGHTS ACT, THIS COURT DECLINES TO AWARD ATTORNEYS' FEES TO PLAINTIFF.

A provision of Michigan's Elliott–Larsen Civil Rights Act, the statute under which Plaintiff prevailed in his age discrimination claim, confers upon this Court the discretion to award attorneys' fees. The relevant section of the Act states:

> A court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate.

Mich.Comp.Laws § 37.2802. Thus, the Michigan act, by its plain language, dictates that an award of attorneys' fees is discretionary.

In light of this statutory language, the Michigan Court of Appeals has held that "two separate inquiries are necessary" in order to resolve a request for attorneys' fees. *Eide v. Kelsey–Hayes Co.*, 154 Mich.App. 142, 397 N.W.2d 532, 541 (1986). Before a court addresses the proper amount of an award, the court must first determine whether to award fees at all, and this threshold decision "is left to the court's discretion." 397 N.W.2d at 541. Accordingly, although the plaintiff in *Eide* had prevailed in her sex discrimination claim, the court rejected her argument "that attorney fees should always be awarded, with only the amount left to the court's discretion." 397 N.W.2d at 541. Instead, the court affirmed the trial court's decision not to award fees. 397 N.W.2d at 542.[1]

In so holding, the *Eide* court discussed the various factors that the trial court had con-

---

1. Although neither party here cited the case, the Court notes that in *Kindig v. Rockwell Int'l Corp.*, 709 F.Supp. 787, 792 (E.D.Mich.1989), the court declined to follow *Eide*, and instead found that "Elliott–Larsen fees should ordinarily be granted to prevailing plaintiffs, except where special circumstances would make such an award unjust." The *Kindig* court found that the discretionary language of the Elliott–Larsen fee provision was essentially the same as the language of 42 U.S.C. § 1988 authorizing fee awards in federal civil rights litigation. 709 F.Supp. at 790 n. 4. Accordingly, because the Supreme Court had established in *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), that fees should generally be awarded to prevailing

sidered in making its decision, but did not endorse a fixed set of factors to guide any subsequent court's exercise of discretion. The court below had distinguished the plaintiff's case from class actions and cases seeking injunctive relief, in which attorneys' fee awards might be necessary to attract competent counsel. 397 N.W.2d at 541. In addition, the trial court noted that the plaintiff's counsel was working under a contingent fee arrangement, and thus would receive one-third of the plaintiff's $300,000 award. 397 N.W.2d at 541. Although the *Eide* court suggested that sole reliance on a contingent fee arrangement would be an improper basis for denying a fee award, the court concluded that the totality of the factors considered by the trial court provided adequate justification for the denial of fees. 397 N.W.2d at 542; *see also Wilson v. General Motors Corp.*, 183 Mich.App. 21, 454 N.W.2d 405, 415–16 (1990) (finding that the presence of a contingent fee arrangement "is merely one of the factors to be considered in determining a reasonable fee award"); *King v. General Motors Corp.*, 136 Mich.App. 301, 356 N.W.2d 626, 629 (1984) ("The trial court in this case improperly determined that the availability of contingent fee arrangements for Elliott–Larsen plaintiffs should automatically preclude an award of attorney fees.")

Like the plaintiff in *Eide*, both of the parties before this Court skip the first part of the attorney fee inquiry, and exclusively devote their energies to a debate over whether Plaintiff has adequately justified the amount of the award he seeks. Plaintiff cites the six factors adopted by the Michigan Supreme Court in *Wood v. Detroit Auto. Inter–Insurance Exch.*, 413 Mich. 573, 321 N.W.2d 653 (1982), and contends that those factors support his claim for full reimbursement of all fees incurred. Defendant responds that Plaintiff has failed to establish the reasonableness of either the number of hours tallied by his counsel or the hourly rate he seeks. However, as the *Eide* court recognized, *Wood*'s six factors address only the proper *amount* of a fee award, and therefore come into play only *after* the basic entitlement to attorneys' fees has been established.

██ Accordingly, although neither of the parties cogently discussed the point, the Court first considers whether a fee award is warranted in this case. The Court finds that it is not. As an initial matter, Plaintiff, by failing to squarely address the question, has not met his burden of justifying a fee award. *See Howard v. Canteen Corp.*, 192 Mich.App. 427, 481 N.W.2d 718, 724 (1991).

In addition, the Court finds that a fee award is not necessary to ensure that the purposes of Michigan's Elliott–Larsen Civil Rights Act are served. In *King v. General Motors Corp.*, 136 Mich.App. 301, 356 N.W.2d 626, 629 (1984), the Michigan Court of Appeals stated that a fee determination should be made "in light of the Legislature's intent to encourage judicial resolution of employment discrimination conflicts and to discourage employment discrimination in general." The sizable judgment for Plaintiff in this case will undoubtedly encourage further

plaintiffs under 42 U.S.C. § 1988, the *Kindig* court reasoned that this general rule should apply under Michigan civil rights law as well.

This Court chooses to follow *Eide* rather than *Kindig*, for two reasons. First, the Supreme Court's determination that fees should typically be awarded in federal civil rights litigation relied heavily upon the legislative history of 42 U.S.C. § 1988; indeed, *Hensley*'s statement that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust" is quoted directly from that legislative history. *See Hensley*, 461 U.S. at 429, 103 S.Ct. at 1937 (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 4 (1976)). Absent a similarly clear mandate from the Michigan legislature, this Court sees no reason to choose *Hensley* over the plain language of the Michigan fee provision as plausibly interpreted by Michigan courts.

Next, *Kindig* states that the decision in *Eide* rested upon two federal cases that have since been called into question. *Kindig*, 709 F.Supp. at 790–91. This Court, however, reads *Eide* differently. *Eide*'s determination that fee awards are left to the discretion of the trial court flowed from the statutory language of the Elliott–Larsen fee provision and from prior Michigan cases. *Eide*, 397 N.W.2d at 541. The *Eide* court neither approved nor disapproved of the rulings in the two federal cases, but merely noted that the trial court had relied on those cases as suggesting some relevant factors in a court's decision whether to award fees. 397 N.W.2d at 541–42. Thus, although *Eide* discussed federal case law for the principles it provides in determining whether a fee award is warranted, the Michigan court did not defer to federal law in its interpretation of the discretionary language of the Elliott–Larsen fee provision.

resort to the courts to vindicate the rights protected under the Elliott–Larsen Act, regardless of whether this Court augments the judgment with a fee award. Moreover, although the record does not disclose the fee arrangements in this case, the Court believes that the successful outcome adequately ensures both that attorneys will take such cases in the future and that Plaintiff's counsel in particular can be adequately compensated in this case. Further, the verdict alone should serve to discourage similar acts of age discrimination in the future; even with the remittitur, no employer would lightly regard the prospect of a judgment in excess of $500,000.

Next, the Court finds that Plaintiff's case involved no inherently difficult issues that might have deterred an attorney absent the motivation of a possible fee award. Neither did Plaintiff secure any injunctive or class-based relief that benefits others as well as himself. Finally, the Court notes that this was a closely contested case, and that the legal defenses raised by Defendant caused the Court to seriously consider both summary judgment and judgment as a matter of law at the close of Plaintiff's proofs. Although the Court ultimately ruled against Defendant on these issues, the Court believes that Defendant's arguments were substantial and not at all frivolous. The narrow margin by which Plaintiff prevailed, then, also militates against an award of fees in this case.

The Court also declines to award the additional costs Plaintiff seeks as part of his request for attorneys' fees. The Court points out that its award of $2,358.15 in costs in its October 26, 1994, opinion and order was expressly based in part on the Elliott–Larsen fee provision. Thus, Defendant is correct in arguing that Plaintiff now seeks *additional* costs. For the reasons discussed above, the Court finds that an additional award would be inappropriate in this case.

**II. THE MICHIGAN RATE OF PRE–JUDGMENT INTEREST IS APPLICABLE ONLY THROUGH FEBRUARY 7, 1994, WHEN THE COURT ENTERED AN INITIAL JUDGMENT FOR PLAINTIFF.**

■ As part of his motion for attorneys' fees, Plaintiff seeks clarification of the amount of pre-judgment interest owed to him under Michigan law. Plaintiff argues that the Michigan rate of pre-judgment interest, which is higher than the federal rate of post-judgment interest, should apply until July 13, 1995, the date on which the Court entered a judgment based on Plaintiff's acceptance of remittitur. Defendant responds that the switch from the Michigan pre-judgment interest rate to the federal post-judgment interest rate should occur as of February 7, 1994, the date on which the Court entered an initial judgment based on the jury verdict.

Defendant is correct; the subsequent remittitur does not alter the fact that judgment was entered on February 7, 1994. The Court finds that *Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 954 F.2d 1263, 1273–75 (6th Cir.1992), is entirely dispositive of this issue. In that case, the Sixth Circuit considered whether post-judgment interest, awardable under 28 U.S.C. § 1961, began to accrue when the district court entered its initial judgment, or only after the district court entered judgment following the plaintiff's consent to remittitur. 954 F.2d at 1274. The court found that damages had been "sufficiently ascertained" at the time of the initial judgment, and had simply been reduced by the remittitur. 954 F.2d at 1275. Because the plaintiff's consent to remittitur did not create a new judgment, but merely modified the prior judgment, the court concluded that post-judgment interest began to accrue on the date the initial judgment was entered. 954 F.2d at 1274–75.

Plaintiff contends that *Coal Resources* is distinguishable, because the court there was only deciding when *any* interest should begin to accrue, rather than confronting a question of *which* interest rate to apply. Thus, Plaintiff asserts that the supposed "policy" behind *Coal Resources*—that prevailing plaintiffs be protected while defendants pursue post-trial motions and appeals—argues for the retention of the higher Michigan interest rate as long as possible.

This Court sees no reason to fashion a labyrinthine rule when a simple rule will do.

*Coal Resources* defines a clear-cut standard for determining "the date of the entry of the judgment" under 28 U.S.C. § 1961(a). In this case, as in *Coal Resources,* Plaintiff's damages were "sufficiently ascertained" by the initial jury verdict, and the remittitur "merely reduced the damages by a distinct amount easily determined from the facts of the case." *Coal Resources,* 954 F.2d at 1275. Moreover, Plaintiff is adequately protected from protracted post-trial litigation, because interest on the judgment has continued to accrue since February 7, 1994, albeit at the lower federal rate.[2]

Accordingly, the Court declines Plaintiff's invitation to select the date upon which judgment was entered based on a "rule" of particularized comparison of the various rates of interest involved in each individual case. Rather, the Court finds that interest began to accrue at the federal post-judgment rate as of February 7, 1994.

### III.  *CONCLUSION.*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' Motion for Attorneys' Fees and Costs be DENIED. IT IS FURTHER ORDERED that Plaintiff collect pre-judgment interest as allowed by Michigan law through February 7, 1994, and post-judgment interest as allowed by 28 U.S.C. § 1961 thereafter.

---

[2]  The Court also points out that, under Plaintiff's proposed rule, prevailing plaintiffs would have an incentive to delay as long as possible before accepting remittitur in cases where, as here, the pre-judgment interest rate is higher than the post-judgment rate. Thus, the *Coal Resources* rule best balances the competing interests of plaintiffs and defendants by removing the date of entry of judgment from the control of the parties.